# TENNESSEE LIQUEFIED GAS CORPORATION, Plaintiff-In-Error, v. ROBERT H. ROSS, Defendant-in-Error.—450 S.W.2d 587.

Western Section.    September 12, 1968.

Certiorari Denied by Supreme Court March 3, 1969.

650

Lloyd Tatum, Henderson, for plaintiff in error.

Walter C. Drake, Edward C. Duke, Jackson, for defendant in error.

CARNEY, J. Upon the trial below the jury awarded the plaintiff, Robert H. Ross, $2,500.00 as damages for the loss of his house trailer and contents by explosion and fire on February 11, 1966. The defendant, Tennessee Liquefied Gas Corporation, has appealed in error.

Assignments of error I, II, III, V, VI, VII, VIII, and IX raise the broad question of whether there was material evidence to support the verdict of the jury and whether the Trial Judge should have directed a verdict for defendant.

■ Where there has been a verdict for the plaintiff approved by the Trial Judge, in considering a defendant's motion for a directed verdict the Court of Appeals must look at all the evidence, construe it most favorably to the plaintiff, take the plaintiff's evidence which supports his theory as true, discard all countervailing evidence and indulge all reasonable inferences to uphold the verdict. Spivey v. St. Thomas Hospital, 31 Tenn.App. 12, 211 S.W.2d 450; Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897; Dunn v. Ralston Purina Co., 38 Tenn.App. 229, 272 S.W.2d 479.

Plaintiff's declaration was in one count and the allegations of negligence are as follows:

"That on or about November 26, 1965, the plaintiff herein hired the defendant corporation, through its servants at Jackson, Tennessee, to install bottled gas to a house trailer owned by the plaintiff and situated on Highway number U. S. 45, north of Henderson in Chester County, Tennessee. That servants of the defendant proceeded to install the necessary connections to the plaintiff's house trailer and in doing so they did not properly install the necessary or proper regulatory devices to control the gas. That one of the defendant's servants informed the plaintiff through his wife and other members of his household of this fact and stated that they would return and install the proper equipment at a later date. That the defendant, Tennessee Liquefied Gas Corporation, had a duty to properly install the necessary and needed regulatory devices to make the plaintiff's trailer home safe for the use of the gas product furnished by the defendant. That the defendant's servants failed to so adjust or install the proper equipment and that as a direct and proximate result of this failure the said house trailer of the plaintiff's was completely destroyed by an explosion and ensuing fire that occurred on or about February 11, 1966. * * *''

The defendant entered a plea of not guilty.

Plaintiff Robert Ross was employed at Brown Shoe Company in Selmer, Tennessee. Sometime prior to Thanksgiving, 1965, he purchased a new house trailer for his home. The trailer was equipped with a gas furnace and gas cook stove. Either natural gas or propane gas could be used in the furnace and stove. Plaintiff contracted with the defendant, Tennessee Liquefied Gas

Corporation, to furnish him propane gas. The plaintiff entered into a written contract with the defendant the pertinent portions of which we copy as follows:

"DEALER-CONSUMER CONTRACT

No. 188                              Date 11-23-65

The undersigned subscriber requests that TENNES-SEE LIQUEFIED GAS CORP. OF _____, or its authorized agents (herein called Dealer) lease and install equipment for bottled-tank gas service to his (or her) appliances.

| Robert | H. | Ross |
|---|---|---|
| First Name | Initial | Last Name |

R #1          Henderson

Complete Address

Location of Property Where Equipment is to Be Used
2 100 lbs. Cyl—Blocks & Reg.

Description of Leased Equipment
    INSTALLATION CHARGE _____$ 10.00
    REFUNDABLE DEPOSIT _____$ 10.00

SUBJECT TO TERMS AND CONDITIONS OF FOLLOWING AGREEMENT:

1. Title to the cylinders, tanks, regulating equipment and cabinet described above shall remain in the Dealer's name. The user agrees to return this equipment in good condition should he discontinue the purchase of gas from Tennessee Liquefied Gas Corp. or its authorized agents. The User further agrees that the service lines, pipes and appliances into which bottled

gas is to be delivered from the regulator will be his property and shall be maintained by him.

2. Any necessary service on the equipment owned by Dealer shall be taken care of by the Dealer free of charge, unless upon inspection it is found to be the case that someone has tampered with this equipment, and in that case the customer shall pay reasonable charge for such service.

\* \* \* \* \* \*

4. The Dealer or Tennessee Liquefied Gas Corp. shall not be liable for any damages or injuries resulting from the use of bottled gas, regulating equipment, valves, appliances, or containers, for failure to perform any obligations hereunder and especially when such failure is due to any cause beyond its control. The user agrees not to permit the refilling of any tank or container by anyone other than an authorized dealer of Tennessee Liquefied Gas Corp.

5. It is expressly agreed between the parties that all the dealer's equipment is now and shall remain personal property, even though it may be fastened to, or attached to the real estate. This agreement is a material part of the whole agreement and without which section the Dealer would not have entered into any part of the agreement.

\* \* \* \* \* \*

9. It is further agreed that the entire agreement is contained in this contract and that no other agreement, oral or written, shall alter, change or qualify the terms hereof.

COMMENTS:

/s/ Robert H. Ross      /s/ Gibson Kendall
_____      _____
Signature of Customer      Signature of Agent of
Tennessee Liquefied
Gas Corp.''

On or about November 26, 1965, employees of the defendant carried the two cylinders or ''bottles'' of gas, two concrete blocks, and a regulator to the house trailer of the plaintiff located in Chester County on Highway 45. This equipment was installed outside the trailer near the front.

The propane gas was connected from a cylinder through the regulator to the piping of the trailer. The cook stove was made ready to use on the first trip. The furnace was not put in operation until a day or two later when the defendant's agents returned and made some adjustments to the furnace before putting it into operation. The evidence is in conflict as to just what adjustments were made by defendant's agents to the furnace.

Defendant's employee Hall testified that the reason the furnace was not put in operation on the first trip was that he did not have the proper wrench to install a propane gas orifice in the burner on the furnace; that ordinarily two separate orifices are furnished by the manufacturer of the furnace. One orifice is for the use of natural gas and the other orifice is for use of propane gas; that the employee Hall along with employee Denton returned a day later and installed a propane gas orifice in the furnace and made sure that the furnace was operating properly when they left.

The orifice used in the furnace in the trailer was a brass cap or screw with a very small hole in the center. The hole was about the size of a pinpoint. Its purpose was to restrict the amount of propane gas which flowed into the burner of the furnace. The only difference between a propane gas orifice and a natural gas orifice is the size of the hole which permits the gas to pass through. Propane gas is heavier than natural gas and the orifice for natural gas has a bigger hole than one with propane gas. Usually the holes were drilled into the orifice by defendant's employees in accordance with specifications furnished by the manufacturer of the furnace.

The plaintiff admitted that the furnace was not hooked up on the first trip but stated that he did not know why. He contended that when the employees came the second time and hooked up the furnace so as to give plaintiff's family heat in the trailer, that they did not have a propane gas orifice with them but they stated to members of plaintiff's family that they were installing a natural gas orifice and would return and install the "right" orifice when they obtained one. Plaintiff testified that he requested the defendant's officials on more than one occasion to furnish the proper propane gas orifice but they never did so.

Plaintiff's father and 11-year-old son testified that the defendant's employees said in their presence that they would come back and put in the right orifice at a later date and that the one they were installing would give them some heat until they could get the right one. The burner from the furnace in the plaintiff's house trailer removed after the fire was introduced in evidence but it was damaged so badly that it was impossible to tell

whether the orifice installed in the burner was a natural gas orifice or a propane gas orifice.

■ Plaintiff testified that from time to time when he went into the office of defendant to order replacement of the bottles of gas he made request of the defendant to procure and install the "right size" orifice or part in the heater and that defendant's agents kept promising to do so but never did make such installation. Defendant's manager, Mr. Long, denied that plaintiff ever asked him about a propane gas orifice. Since the jury found in favor of the plaintiff we must accept plaintiff's evidence as true and hold that there was material evidence to support the finding of the jury that the defendant was guilty of negligence in failing to install a propane gas orifice in the heater.

Therefore, the next question we consider is whether there is material evidence to support the finding of the jury that such negligence on the part of the defendant constituted a proximate cause of plaintiff's damages, namely the explosion and burning of the trailer. The plaintiff heated his trailer with the furnace from about November 26, 1965, to the date of the explosion and fire on February 11, 1966. He noticed that the furnace seemed to burn black and to cause smoke to go out of the vent through the roof and caused soot to accumulate on the floor of the bathroom near the furnace. Plaintiff testified that he went by defendant's office and asked if smoke was supposed to come out of the vent of the furnace and was told that it was not and that they would check it but they never did. Defendant's manager, Mr. Long, denied this but the jury believed plaintiff.

No member of the family was at home at the time of the fire. The explosion and fire occurred between 4:00 and

5:00 P.M. The plaintiff was at work. His wife, Mrs. Ross, left work at the shirt factory at 4:00 P.M. and went to the trailer. She picked up two of the children and drove to a laundry nearby to wash clothes. So far as she knew the furnace was working properly and she noticed nothing unusual about the trailer or the odor therein.

Mrs. Nadine Plunk, a neighbor, passed the trailer sometime around 3:00 P.M. and noticed black smoke coming out of the vent or flue of the trailer. The smoke was black enough that she thought they were burning coal in the trailer.

Dennis Lewis testified that sometime after 4:00 P.M. and before 5:00 P.M. on the afternoon of February 11, 1966, he was in front of Bill Smith's home about 250 yards from the trailer when he heard an explosion and at that time did not associate the explosion as being at the trailer; that he went into a donut shop, drank a "coke"; came out, saw the smoke and rode over to the trailer and observed it burning. About six minutes elapsed from the time he heard the explosion until he arrived at the trailer. A big hole four feet in diameter had been blown by the explosion in the side of the trailer. While he was there the four tires on the trailer exploded.

Shortly after five o'clock Mrs. Ross and her husband were informed at a filling station that their trailer had burned. When they returned shortly after 5:00 P.M. the trailer had been destroyed by fire.

Plaintiff relied upon the testimony of Mr. VanDyke, Superintendent of Customer Installations with the Utility Department of the City of Jackson, Tennessee, as an expert witness to prove his theory that the negligent installation of the natural gas orifice in the furnace by

the defendant was the cause of the explosion and fire which destroyed the trailer. Mr. VanDyke testified that he had been associated with the Gas Department since May, 1946, and that while most of his work was with natural gas the department used propane gas as a standby and that he was in fact fully familiar with installations using both kinds of gas. He explained that natural gas was in vapor form and that propane gas was in liquid form. He further explained that if a natural gas orifice is used for propane gas more gas and less air will be injected into the burner than the heater was designed for and that this will result in the formation of carbon monoxide in the place of carbon dioxide. Carbon monoxide will make deposits of carbon on the lining of the furnace. Also black smoke from carbon deposits can block passage through the furnace. A blocked passage can produce a "spill" and accumulation of unburned gas. Since propane gas is heavier than air the "spill" will drop to the bottom of the container holding the gas furnace or to the floor of the room much in the manner that water will seek its own level when poured on the floor of a room. Further, he explained that propane gas in its natural form is colorless and odorless and while an artificial odor was added so that escaping gas could be detected, it was entirely possible for propane gas to accumulate along the floor of the trailer and when it had piled up sufficiently to reach the pilot light on the furnace or come in contact with any other spark or ignition, an explosion could result without the occupants realizing the gas was on the floor. He admitted that sewer gas seeping into the house trailer could have caused the explosion and that he could not say what actually caused the explosion and did not think anyone else could say.

The septic tank under plaintiff's house trailer was not vented. He also said that lint could accumulate around the burner and block passage of air through the chamber of the furnace and cause a "spill over" of unburned gas.

The defendant contended that the propane gas orifice was properly installed in the furnace and that there was no improper installation of any kind and no negligence on its part and that in all probability the house trailer was destroyed from an explosion and fire resulting from the seepage of sewer gas from the septic tank located under the house trailer especially since the septic tank was not vented. The defendant introduced some proof tending to show that this was possible. Defendant's witness, Mr. Vester Britton, who lives in Henderson, Chester County, Tennessee, testified that he was in the business of constructing and cleaning out septic tanks and had been for five years; that sewer gas, if put under pressure, would burn or explode. Further, he testified that septic tanks should be vented and that sometimes the vent becomes stopped up and sewer gas backs up into a home causing foul odor and that after they are pumped out the pressure is removed and the vent is reopened; that most homes have vented sewer pipes and septic tanks but that in most of the house trailers people do not realize the importance of vents and septic tanks are not vented; that he did not know anything about the Ross trailer and that he had had no personal experience with sewer gas exploding.

Since the jury presumably did not believe the testimony of the defendant, it is not necessary for us to notice further the testimony of the defense. When we consider the testimony of Mrs. Plunk that on the day in question there was heavy black smoke coming out of the vent of

the trailer and further the testimony of Mrs. Ross that she often found soot on the bathroom floor near the furnace and we consider the finding of the jury that the defendant had negligently installed a natural gas orifice in the furnace instead of a propane gas orifice and we further consider the testimony of Mr. VanDyke that a natural gas orifice would inject too much propane gas into the chamber causing carbon deposits and ultimately a spill over of unburned gas, we hold that there was material evidence from which the jury could reasonably have found that the negligent installation of the natural gas orifice was a proximate cause of the explosion and fire which destroyed the plaintiff's trailer.

The defendant insists that there is no proof by the plaintiff that the defendant did in fact install a natural gas orifice but only proof that defendant's employees said they had installed the "wrong orifice." The very purpose of installing an orifice in the burner was to regulate the amount of propane gas which would be injected into the burner in order to unite with the atmospheric oxygen to form the combustion. If the defendant's employees did not install a propane gas orifice then they were guilty of negligence regardless of what "wrong kind" of orifice they did put in the furnace. In a civil case depending on circumstantial evidence it is sufficient for the party having the burden of proof to make out the more probable hypothesis and the evidence need not arise to that degree of certainty which will exclude every other reasonable conclusion. It is only necessary for the plaintiffs to present proof which, if believed by the jury, makes the plaintiffs' theory of the case more probable than the theory of the defendant. Phillips v. Newport (1945), 28 Tenn.App. 187, 187 S.W.2d 965; Pickard

v. Berryman, 24 Tenn.App. 263, 142 S.W.2d 764. Assignments of error I, II, III, V, VI, VII, VIII, and IX are respectfully overruled.

Next we consider assignment of error No. IV which is to the effect that the plaintiff was guilty of proximate and direct contributory negligence which brought about his own injuries and damages and barred his right of recovery. Plaintiff relies very heavily upon the case of Gable v. Tennessee Liquefied Gas Co. (1958), 45 Tenn. App. 674, 325 S.W.2d 657, in which this court held that the plaintiff landowner was guilty of such proximate contributory negligence as to bar his right of recovery.

The Gable case involved a suit for damages resulting from an explosion of leaking propane gas. The facts of the Gable case differ from the present case in that in the Gable case the plaintiff was told by an employee of the defendant Gas Company that a certain valve in the plaintiff's gas lines was defective and should be replaced. The defendant's employees agreed to replace it the next day. Even though the plaintiff knew that the line was leaking gas or likely to leak gas, the plaintiff continued to use propane gas through such defective valve for a period of six weeks. During this time gas escaped and accumulated in the basement of plaintiff's premises and later was ignited and exploded. There is no proof in the present case that the plaintiff was ever informed that the results of the installation of the ''wrong orifice'' might be the accumulation of gas within his trailer. In the Gable case there was a trial before the judge without a jury and on appeal the case came to this court for trial de novo. T.C.A. Section 27-303.

In the case at bar a jury has already found that the plaintiff was not guilty of contributory negligence and

the Trial Judge has approved the verdict. We cannot reverse this finding if there was any material evidence before the jury to support such finding.

■ We cannot say that all reasonable minds must agree that the plaintiff Ross knew or should have known that there was danger of fire and/or explosion from gas escaping from defendant's installation of the "wrong orifice" and was therefore guilty of contributory negligence in using the furnace. Since the lives of the plaintiff and his family were jeopardized by the spill over of gas from the "wrong orifice" we think it more probable that the plaintiff did not realize the danger of explosion and fire but was insisting upon the defendant installing the "right orifice" to make the furnace more efficient and more cheaply operated. Therefore, assignment of error No. IV is respectfully overruled.

Defendant's assignment of error No. X is as follows:

"The Court erred in overruling the twelfth ground of the defendant's Motion for a New Trial, which was as follows:

'The Court erred in overruling the defendant's motion to strike all of the testimony of plaintiff that contradicted the terms of the written contract filed as Exhibit III to the plaintiff's testimony.' "

For convenience we copy paragraph 4 of the contract as follows:

"4. The Dealer or Tennessee Liquefied Gas Corp. shall not be liable for any damages or injuries resulting from the use of bottled gas, regulating equipment, valves, appliances, or containers, for failure to perform any obligations hereunder and especially when such

failure is due to any cause beyond its control. The user agrees not to permit the refilling of any tank or container by anyone other than an authorized dealer of Tennessee Liquefied Gas Corp.''

The defendant contends that it was exonerated from liability for negligence under paragraph 4 of its contract with the plaintiff and cites and relies upon the case of Trailmobile, Inc. v. Chazen (1963), 51 Tenn.App. 576, 370 S.W.2d 840, and the cases cited therein.

The general rule throughout the country seems to be that while a party may by contract exempt another party from liability for negligence, such contracts are to be strictly construed. 17 C.J.S. Contracts sec. 262, p. 1160, and 17 Am.Jur.2d page 556, Section 188. However, Tennessee has chosen not to apply the rule of strict construction and has adopted a rule of reasonable construction with the purpose of arriving at the real intention of the parties in view of the subject matter and circumstances of the execution of the contract. Robinson et al. v. Tate, 34 Tenn.App. 215, 236 S.W.2d 445; Moss v. Fortune, 207 Tenn. 426, 340 S.W.2d 902.

It is to be noted that in the case of Moss v. Fortune our Tennessee Supreme Court upheld the validity of a contract absolving the tort feasor from liability. In that case a patron of a riding academy signed the following agreement: ''I am hiring your horse to ride today and all future rides at my own risk.'' The patron was injured from a fall resulting from a defective stirrup strap and brought suit for personal injuries alleging negligence on the part of the riding academy. The defendant by plea set up the defense that the plaintiff had assumed the risk under the contract above quoted. The case was heard on

the plaintiff's demurrer to defendant's plea. Justice Felts wrote the opinion sustaining the plea. In Trail-mobile, Inc. v. Chazen, supra, the defendant relied upon a special plea of waiver and release of liability by contract to which plea the plaintiff's demurrer was sustained. Presiding Judge McAmis of this court reversed on the authority of Robinson, et al. v. Tate and Moss v. Fortune, supra.

█ In the case at bar the defendant, Tennessee Liquefied Gas Corporation, did not plead assumption of risk nor the execution of the contract but only filed a plea of not guilty. The defendant claimed non-liability under the contract by objecting to admissibility of evidence under the parol evidence rule. Plaintiff's suit in this case was couched in tort and all of his evidence related to alleged negligent acts of the defendant. Such evidence was not introduced for the purpose of varying the terms of a written contract. Hence, the parol evidence rule has no application and the evidence was admissible.

██ However, it is clear that the substance of the defendant's objection to the evidence was that the plaintiff had contracted away his right to sue for damages for loss of his trailer from fire and/or explosion resulting from the use of propane gas furnished by the defendant. Even though the plaintiff did not require the defendant to plead specially we think this defense was admissible under the plea of the general issue or not guilty. The plaintiff's suit in this case was known at common law as one for trespass on the case for negligence and a plea of not guilty not only denies the wrongful acts complained of but admits evidence of justification, excuse, discharge, arbitrament, compromise, former adjudication, accord and satisfaction, release or any other de-

fense that would defeat the action except the statute of limitations. History of a Lawsuit, 8th Edition, page 264, Section 221.

Therefore, we consider assignment of error No. X as insisting that the Judge erred in holding that the plaintiff's right to bring his suit was not barred by paragraph 4 of the contract. The Tennessee case most nearly in point is Moss v. Fortune, 207 Tenn. 426, 340 S.W.2d 902. We do not believe that the holding of Moss v. Fortune should be extended.

Paragraph 4 of the contract is not free from ambiguity and does not clearly set out that the plaintiff is exempting the defendant from liability for negligence in adjusting a new gas furnace in plaintiff's new trailer. The defendant had knowledge much superior to the plaintiff of the dangers likely to result from improper adjustment of the furnace. The agreement by the defendant to adjust and make the furnace ready for operation was not contained in the written agreement. The words explosion, fire, and negligence do not appear in the agreement. The contract was prepared by the defendant and all ambiguities should be construed strictly in favor of the plaintiff. Associated Press v. W. G. N. S., Inc., 48 Tenn.App. 407, 348 S.W.2d 507; Marron v. Scarbrough, 44 Tenn.App. 414, 314 S.W.2d 165; Weatherly v. American Agricultural Chemical Co., 16 Tenn.App. 613, 65 S.W.2d 592. We hold that there was no meeting of the minds and that paragraph 4 of the written contract did not exonerate the defendant, Tennessee Liquefied Gas Corporation, from liability for negligence committed while doing an act not specifically covered by the contract. Hence, assignment of error No. X is respectfully overruled.

The judgment of the lower court is affirmed with interest and the costs of the appeal are taxed against the defendant, Tennessee Liquefied Gas Corporation.

When this case was argued, Chancellor Brooks McLemore of Jackson, Tennessee, by consent sat in the place of Presiding Judge Avery who was ill.

Bejach, J., and Brooks McLemore, Special Judge, concur.