**Harriet Teresa MARTIN,**
**Plaintiff/Appellee,**

v.

**WASHMASTER AUTO CENTER, U.S.A.,**
**d/b/a Washmasters Auto Centers, and**
**Murfreesboro Road Autowash Corpora-**
**tion, d/b/a Washmasters Auto Centers,**
**Defendants/Appellants.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 11, 1996.

Permission to Appeal Denied by
Supreme Court May 5, 1997.

Larry R. Williams, Carolyn E. Underwood, Larry R. Williams, P.C., Nashville, for Plaintiff/Appellee.

Thomas Pinckney, Andy Rowlett, Howell & Fisher, Nashville, for Defendants/Appellants.

## OPINION

CANTRELL, Judge.

In this slip and fall case, the main issue on appeal is whether there is any evidence to support the plaintiff's verdict. We resolve that issue against the plaintiff and enter a judgment for the defendant in accordance with the motion made at the end of all the evidence.

### I.

After falling on the asphalt at Washmasters Auto Center, a Nashville carwash, Harriet Teresa Martin[1] brought suit in the Davidson County Circuit Court where a jury found that she had sustained damages in the amount of $125,148.18. Upon the jury's determination that the Defendants, Washmaster Auto Center, U.S.A. d/b/a Washmasters Auto Centers, and Murfreesboro Road Autowash Corporation, d/b/a Washmasters Auto Centers, were 75% at fault and the plaintiff 25%, the trial court entered a judgment against the defendants in the amount of $93,861.14.

The defendants moved the trial court to set aside the judgment on the jury verdict and to enter a judgment in accordance with their motion for a directed verdict. In the alternative, the defendants moved the trial court for a new trial. The trial court denied

1. By the time the plaintiff's case came to trial, she had divorced and remarried such that her name was Teresa Taylor Gentry. However, for purposes of this appeal, the plaintiff will be referred to by her previous name under which she initiated these proceedings.

these motions and on this appeal the defendants have raised issues involving the plaintiff's failure to prove that the defendant carwash was negligent.

"Where there has been a verdict for the plaintiff approved by the Trial Judge, in considering a defendant's motion for a directed verdict the Court of Appeals must look at all the evidence, construe it most favorably to the plaintiff, take the plaintiff's evidence which supports his theory as true, discard all countervailing evidence and indulge all reasonable inferences to uphold the verdict." *Tennessee Liquefied Gas Corp. v. Ross,* 60 Tenn.App. 648, 450 S.W.2d 587, 588 (1968). Pursuant to Tenn.R.App.P. 13(d), this Court's responsibility is to determine whether there is any material evidence to support the verdict.

## II.

The proof in its most favorable light to the plaintiff shows that on December 28, 1989, Teresa Martin stopped at the Washmasters carwash in Nashville to get her car washed. While on the premises, Ms. Martin fell causing injury to her knee and giving rise to this action. Because this case places at issue Washmasters' negligent operation of its carwash, a detailed account of the carwash and its method of operation must be given. The Washmasters facility consists of a main building, a smaller building used for specialty detailing services, and a paved asphalt area which separates the two buildings. After turning over their cars to attendants, customers enter the main building where there is a customer service area and a lobby in which they can wait. Here, there are windows in the wall through which customers can watch their cars as they move through a car washing tunnel.

In 1989, Washmasters' most popular package, "the Works," included an alkaline presoak, a foamy tire cleaner, another alkaline, forty gallons of water, a hot wax, a shine plus, a polysilicone, and a final rinse of nine gallons of water. After receiving this treatment, the vehicles run through a forced air drying area at the end of the tunnel. Testimony established that some water might remain on the car and might drip off as the car emerges from the tunnel. When the manager was asked about the chemical residue included in this water, he stated that there would be none—that any liquid which drips off as the car emerges from the tunnel would be pure water.

When the cars reach the end of the tunnel, employees get in and drive them out of the tunnel and into one of several bays in the main building. Here, employees typically vacuum the interiors of the cars removing trash from them which could include liquid trash. In addition, on a busy day, the windows might be cleaned in this area. Once a car is finished in the bay area, an employee drives it out of the main building across a drain between the indoor bay and the outside asphalt area.

Once outside, an attendant will perform the final work on a car such as cleaning the tires, the windows, and the interior. The cleaning solutions are kept in squirt bottles in carts in this outside area. The window cleaner used is an all-purpose cleaner diluted with water at a ratio of twenty-four units of water to one unit of cleaner. The tires are cleaned by squirting a pad with Protect–All and then wiping the tires, although, sometimes, Protect–All is applied directly to the tires. Protect–All is a water-based chemical which, upon the label, states that it reduces friction. A degreaser may be sprayed to remove minor tar from the exterior of the cars. The carwash manager testified that carwash employees might occasionally drop the plastic bottles of cleaners causing some cleaner to spill out onto the asphalt.

The carwash employs supervisors, known as "loose persons," who roam the premises in search of problems that have arisen and customers in need of assistance. These employees pick up trash and take care of any spillage which might necessitate blocking off portions of the bay area in order to clean up a spill. The carwash manager testified that on a day such as the day that the plaintiff fell, Washmasters would have had six loose persons monitoring the carwash.

When the work in the pick-up area is completed and the car is ready, an employee waves a towel to signal to the customer. It

is undisputed that the most feasible way for customers to retrieve their cars after exiting the lobby is to walk through the bay areas, across the drain, and onto the asphalt work area where the cars are waiting. Robert Whitaker, an expert for the defendant who is a structural engineer, testified that the surface of the bay floor consists of textured concrete paving stones which are widely used and recommended for car and pedestrian traffic. Mr. Whitaker observed that water accumulates in the bay area. He noted that, as the surface is made of precast concrete, it does not absorb anything. Although water would soak through the mortar joints of this surface if the stones had been installed, as recommended, in sand, Mr. Whitaker testified that they were installed in mortar. Moreover, the bay area has no slope to it further accounting for the accumulation of water.

On the other hand, according to this expert, the asphalt surface of the outside pickup area, where the plaintiff's injury occurred, is absorbent and thus even an oil spill will not stay on the surface for long periods. Mr. Whitaker testified that the asphalt, with its textured surface, has good traction even when wet. Both Mr. Whitaker and the carwash manager testified that water pools cannot accumulate on the asphalt surface because there is a slight grade toward the drain that separates the asphalt from the bay area.

When the plaintiff saw that her car was ready around 10:30 on the morning of December 28, she walked out of the Washmasters lobby and through the bay area with a purse over her left shoulder and a car seat in her right hand. After crossing the drain which separates the bay area from the outside asphalt area, plaintiff took several steps and then fell. She testified as follows, "[a]s soon as I walked off of the brick-type surface past the drain, maybe three or four steps, I immediately went down, slipped and went down on my left knee.... What I slipped on was very slippery; I mean, it had to be. I went straight down."

Ms. Martin testified that the carwash was very busy on the day of her accident and that she noticed "a lot" of water on the asphalt area prior to falling. When asked if it were possible that she slipped on something that a customer dropped or rainwater, Ms. Martin said, "I don't know. It wasn't visible.... This was something slippery other than just rainwater or ice water." She stated that no employee of the carwash had warned her about the slippery condition of the surface either on the day that she fell or on any of her previous eighteen or twenty trips to the carwash. She also testified that, on her previous visits, she had never noticed any dangerous condition.

As for prior accidents on the premises, Mr. Andriotto, the car wash manager, testified that he had slipped in another area of the facility while running at the carwash on one occasion in 1984; however, he had no idea what he slipped on. Other than this, no evidence was presented at trial that anyone had fallen at the Washmasters facility.

### III.

In light of the evidence presented at trial, defendants contend that the trial court was in error in failing to direct a verdict in their favor. A directed verdict is appropriate when the evidence supports only one conclusion. *Williams v. Brown,* 860 S.W.2d 854, 857 (Tenn.1993). However, "[a] case should go to the jury, even if the facts are undisputed, if reasonable persons could draw conflicting inferences from the facts." *Underwood v. HCA Health Services of Tenn., Inc.,* 892 S.W.2d 423, 426 (Tenn.App. 1994) *(citing Sauls v. Evans,* 635 S.W.2d 377, 379 (Tenn.1982)). The jury is permitted to reasonably infer facts from circumstantial evidence, and these inferred facts may be the basis of further inferences of the ultimate fact at issue. *Benson v. H.G. Hill Stores, Inc.,* 699 S.W.2d 560, 563 (Tenn.App.1985). "An inference is reasonable and legitimate only when the evidence makes the existence of the fact to be inferred more probable than the nonexistence of the fact." *Underwood,* 892 S.W.2d at 426. On the other hand, the jury is not permitted to engage in conjecture, speculation, or guesswork as to which of two equally probable inferences is applicable. *Stringer v. Cooper,* 486 S.W.2d 751, 756 (Tenn.App.1972).

We must determine whether, as a matter of law, Ms. Martin's evidence would enable a reasonable person to conclude that her injury was, more probably than not, caused by Washmasters' negligence. While business proprietors, such as Washmasters, are not insurers of their patrons' safety, they are required to use due care under all circumstances. *Smith v. Inman Realty Co.,* 846 S.W.2d 819, 822 (Tenn.App.1992). In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, it must be shown that the condition (1) was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, there must be actual or constructive notice on the part of the owner or operator that the condition existed prior to the accident. *Ogle v. Winn–Dixie Greenville, Inc.,* 919 S.W.2d 45, 47 (Tenn.App.1995); *Jones v. Zayre, Inc.,* 600 S.W.2d 730, 732 (Tenn.App.1980). Constructive knowledge can be shown by proving the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of such condition. *Simmons v. Sears, Roebuck and Co.,* 713 S.W.2d 640, 641 (Tenn.1986).

Alternatively, the notice requirement is met if the plaintiff can prove that the defendant's method of operation created a hazardous situation forseeably harmful to others. *Hale v. Blue Boar Cafeteria Co.,* (Tenn.App., unpublished opinion, filed at Jackson, Feb. 21, 1980).

### IV.

The defendants assert that plaintiff offered no proof as to what caused her to fall. She did not prove that defendants created a dangerous or defective condition or that defendants had notice of such a condition. While plaintiff is correct in her argument that she is not required to prove the specific slippery substance that caused her to fall, *see Beske v. Opryland USA, Inc.,* 923 S.W.2d 544 (Tenn. App.1996), it is necessary that she show that the defendant caused the substance upon which she slipped to be on the asphalt or, if not, that the defendant knew or should have known that the slippery substance was present.

The proof showed that water and perhaps friction-reducing chemicals may accumulate in the indoor bay areas of the car wash across which the plaintiff had to walk in order to retrieve her clean vehicle. Although the plaintiff testified that she noticed water on the asphalt surface where she actually fell, the uncontroverted expert testimony was that this surface was highly absorbent and sloped toward a drain so that liquid substances would not accumulate. The plaintiff acknowledged that pavement wet from rainwater alone is not slippery and that Washmaster could not have avoided rainwater being on this outside asphalt area. The plaintiff's theory seems to be that the defendant created this dangerous condition by allowing slippery car wash chemicals to be on the ground—chemicals which came into contact with plaintiff's feet either as she walked through the bay area or as she emerged onto the asphalt area.

While plaintiff's theory is not implausible, it must be more probable than any other theory in order for this Court to uphold the verdict. *See Tennessee Liquefied Gas Corp. v. Ross,* 60 Tenn.App. 648, 450 S.W.2d 587, 593 (1968). As we have stated, the jury may not speculate as to the cause of the plaintiff's fall when one is not shown, nor may it speculate between two equally probable causes, for only one of which the defendant is responsible. *Stringer v. Cooper,* 486 S.W.2d 751, 756 (Tenn.App.1972). The defendant argues that the plaintiff could have slipped on oil, transmission fluid, coolant, tobacco juice, or ice. We agree. Even the plaintiff, when confronted with the possibility that she had slipped on something dropped by a customer, testified that she "didn't know." The plaintiff, by her evidence, effectively demonstrates a potential hazard for any carwash—that slippery chemicals might be inadvertently placed in the paths of patrons giving rise to such accidents. However, it is this court's opinion that the plaintiff failed to show that, more probably than not, it happened in this instance.

In *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271 (Tenn.App.1987), the trial court directed a verdict for the defendant in a situation where the plaintiff had fallen in a large puddle of water in the defendant restaurant's bathroom. The plaintiff had no information as to the origin of the water; however, it was the plaintiff's theory that the water was tracked in from the outside as the proof showed that there was snow and slush outside and that the parking lot was "partly frozen and partly slushy." *Id.* at 272. There was also proof that there were no mats in place for customers to clean their feet and that it could have been as long as forty-five minutes since an employee made a periodic inspection of the bathroom floor which was made of smooth inlaid brick.

In upholding the trial court's decision, this Court stated that "[t]here is no evidence of the source of the water which caused the plaintiff to fall." *Id.* at 273. "Other than the presence of snow and slush outside, there is no evidence that the defendant knew or should have known that a puddle in the restroom would result from the snow and slush outside." *Id.* at 274. In the reasoning of *Chambliss,* we find support for our conclusion: other than the fact that the defendant carwash uses potentially slick chemicals, there is no evidence that these chemicals were on the outside asphalt surface making this surface dangerously slick. As we in our case acknowledge the possibility of plaintiff's theory, the *Chambliss* court recognized that its plaintiff's "trackage" explanation was a possibility though remote in light of the distance between the outside entrance and the restroom. *See also Durham v. Webb,* No. 02A01–9502–CV–00033, 1996 WL 298250 (Tenn.App. June 3, 1996) (affirming a trial court's grant of summary judgment where plaintiff alleged that she slipped on an oil spot at the defendant gas station but offered no proof other than the fact that she saw oil in this spot one week after the accident and the testimony of a frequent customer who stated that she had observed oil spots in the parking lot on undisclosed prior occasions).

Even if Ms. Martin failed to show that Washmasters created a hazardous condition, the verdict would stand if she could show that the jury could have reasonably inferred that the defendant carwash had actual or constructive notice of a dangerous condition created by someone else. Ms. Martin testified that the slippery substance was not visible to her before she fell. However, this Court has noted that notice is not based upon the ability to see the hazardous condition, but the visibility of the event which caused the hazardous condition to be present. *Benson v. H.G. Hill Stores, Inc.,* 699 S.W.2d 560, 565 (Tenn.App.1985). The plaintiff has offered no evidence establishing that the carwash's employees actually knew that a slippery substance had been placed on the outside asphalt. As for constructive notice, in light of the fact that we have already concluded that there is insufficient proof establishing that the slippery condition existed at all, there is certainly no evidence showing that this condition had existed for such a length of time that the defendant, exercising reasonable care, should have been aware of it.

We next address the plaintiff's assertion that the "Method of Operation" theory of liability as outlined in *Hale v. Blue Boar Cafeteria Co.* (Tenn.App., unpublished opinion, filed at Jackson, Feb. 21, 1980), is applicable to these facts. The defendant in *Blue Boar* was a self-service cafeteria which was set up so that customers selected food from a line and then carried it to tables in one of two dining areas. Though waitresses would come to the tables to take drink orders, there was a service stand where the defendant kept ice, water, tea, coffee glasses and cups, as well as a depository for dirty dishes. *Id.* at 3. Customers would serve themselves drinks from this service stand.

The floor in the self-service area, which was adjacent to the carpeted smaller dining area, was hard tile. It was necessary for all occupants of the small dining room to walk through the service area in order to go to the cash register or to leave the restaurant. The proof showed that it was customary during rush hours for beverages to spill or for bits of food to accumulate on the floor. Employees were instructed to clean the floor prior to meals and any other time that they observed debris on the floor. The plaintiff fell on water in this area, but she could not show

who spilled the water or that the defendant had notice that it had been spilled.

The court reviewed the law "in slip and fall cases where the alleged cause of the injury was a transitory, temporary or unusual defect, condition or accumulation of foreign substances on floors" and found the law to be that notice must be shown if the substance upon which the plaintiff fell was not placed there by the defendant. *Id.* at 5 (*citing Stringer v. Cooper,* 486 S.W.2d 751, 757 (Tenn.App.1972)). Distinguishing its case as one "not predicated upon a transitory, temporary or unusual circumstance," the court articulated the following rule:

> If a proprietor of a place of business need not have notice of a defective condition caused by it or any of its employees, it appears logical not to require notice of a hazardous situation created by the method in which the proprietor chose to operate its business. We, therefore, hold that in situations of this nature it is not a matter of knowledge in or actual or constructive notice to the proprietor. In these situations the questions are: (1) whether the condition created by the chosen method of operation constitutes a hazardous situation foreseeably harmful to others, (2) whether the proprietor used reasonable and ordinary care toward its invitees under these circumstances, and (3) whether the condition created was the direct and proximate cause of the plaintiff's injury.

*Blue Boar* at 6.

The three-question test announced in *Blue Boar* completely omits any requirement of notice under the theory that a defendant who has created a dangerous condition needs no notice of what he has done. *See id.* at 5 (*quoting Stringer,* 486 S.W.2d at 757); *see also Maxwell v. Red Food Stores, Inc.,* 1988 WL 95273, No. 88–110–II (Tenn.App. Sept. 16, 1988) and *Bledsoe v. Delta Refining Co.,* (Tenn.App., unpublished opinion filed at Jackson, Nov. 4, 1983) (both referring to the three-prong standard of *Blue Boar* ). However, in the wake of *Blue Boar,* this Court has begun to articulate the Method of Operation theory in terms of constructive notice. In *Worsham v. Pilot Oil Corp.,* 728 S.W.2d 19, 20 (Tenn.App.1987), the Court first stated

that "the requirements of constructive notice may be met where a dangerous condition inside a self-service business in not an isolated one but is reasonably foreseeable to the owner because the condition is established by a pattern of conduct, a recurring incident or a general or continuing condition." *See Beard v. SCOA Industries, Inc.,* No. 88–358–II, 1989 WL 60360, at *4 (Tenn.App. June 7, 1989) (referring to the above quoted language from *Worsham* as a summary of the Method of Operation theory). More recent cases have focused almost entirely on determining whether there is a pattern of conduct, a recurring incident or a general or continuing condition indicating the dangerous condition's existence. *See Beske v. Opryland USA, Inc.,* 923 S.W.2d 544, 546 (Tenn.App. 1996) (upholding a plaintiff's verdict where there was "evidence of the recurrent problem of discarded beverages in the area and of the failure of defendant to reasonably monitor this recurrent dangerous condition") *and Wilson v. Target Stores, Inc.,* No. 03–A–01–9209–CV–00322, 1993 WL 30617, at *3 (Tenn. App., Feb.10, 1993) (upholding a defendant's verdict in a case where plaintiff claimed that a stack of ironing boards fell on her where "[t]he proof established ... that the ironing boards were stacked on a shelf with a fence or border holding them in place and that this method was used in all of defendant's other business locations without any incidents such as this occurring").

■ As applied to the case at bar, there is no material evidence to support the plaintiff's verdict under the Method of Operation standard either as initially stated in *Blue Boar* or under the test focusing on constructive notice. As for the latter, the proof did not indicate that car wash chemicals had ever before mixed with the water on Washmasters' floor giving rise to a "general or continuing" slippery condition. The plaintiff testified that, in her previous eighteen to twenty visits to the carwash, she had never noticed a dangerous condition at Washmasters. Furthermore, there was no evidence that "slip and fall" accidents at the carwash were a common or "recurring incident." *See Beard,* 1989 WL 60360, at *5. Indeed, the plaintiff presented no evidence of anyone falling other

than the manager Mr. Andriotto who testified that he had fallen five years prior to the plaintiff's fall while running in the indoor bay area. Significantly, he did not say that he fell due to slippery conditions. In conclusion, there is simply no evidence showing that a dangerous condition was "reasonably foreseeable to the owner because the condition is established by a pattern of conduct, a recurring incident or a general or continuing condition." *Worsham,* 728 S.W.2d at 20.

Likewise, analyses under the standard of *Blue Boar* leads to a conclusion that the carwash was not negligent. In determining "whether the condition created by the chosen method of operation constitutes a hazardous situation foreseeably harmful to others," we look to the deficiency of the evidence as articulated in the preceding paragraph. Because there is no proof that slippery conditions or resultant falls have ever been a problem at Washmasters, we cannot say that there is any evidence that the defendant's mode of operation created a hazardous situation. *See Beard,* 1989 WL 60360 at *5 (no material evidence that defendant's method of operation created a hazardous condition where, though customers bought and occasionally spilled popcorn in department store, this did "not present the level of unsafety or the regularity of recurrence evident in *Blue Boar*").

Because the plaintiff has not offered any material evidence upon which the jury could have found that the defendants were negligent, we set aside the jury's verdict and grant judgment in favor of the defendants. In light of our disposition of this case, the remaining issues concerning the grant of a new trial are pretermitted. The case is remanded to the Circuit Court of Davidson County for any further necessary proceedings. Tax the costs on appeal to the appellee.

LEWIS and KOCH, JJ., concur.