## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **HAZEL THREET,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | **Davidson Circuit No. 96C-123** |
| | ) | |
| **VS.** | ) | **Appeal No. 01A01-9805-CV-00255** |
| | ) | |
| **OPRYLAND, USA, INC.,** | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

**FILED**

July 14, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE MARIETTA M. SHIPLEY, JUDGE

**MALCOLM L. McCUNE**
**BLACKBURN, SLOBEY, FREEMAN & HAPPEL**
Nashville, Tennessee
**JAMES W. NOBLES, JR.**
Jackson, Mississippi
Attorneys for Appellant


**DIANNA BAKER SHEW**
**FARRIS, WARFIELD & KANADAY**
Nashville, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Plaintiff Hazel Threet ("Threet" or "Appellant") appeals the judgment of the trial court

which granted summary judgment to Opryland, USA, Inc. ("Opryland" or "Appellee"), dismissing the Complaint of Threet.

## I. Factual and Procedural History

On October 20, 1992, Threet and a group of her fellow church members from Pearl, Mississippi, were in Nashville, and were guests at the Gaslight Theater and the Nashville Now show, owned and operated by Opryland. The group entered the theater prior to the show and were seated on one of the upper rows of the theater. To get to and from her seat, Threet had to ascend and descend the stairs and aisle. After the show was finished, Threet, along with the other members of the group (including Mr. and Mrs. Clyde Blount, and Jolene Miley) began to descend the stairs along the aisle. Threet tripped on a chair leg, which was protruding into the aisle and stairway, fell and fractured her hip.

According to Threet, Jolene Miley, and Mr. and Mrs. Blount, lighting in the theater was dimmed shortly before the accident, so that the lighting in the area where Threet fell was insufficient for Threet to discern and see the chair leg protruding into the aisle. The lights were under the exclusive control of Opryland's employees.

Threet sued Opryland for damages, alleging that Opryland failed to make its premises reasonably safe by its failure to remove a chair which had protruded into the stairway, which had come loose from a string of chairs to which it was attached, and Opryland's failure to provide or maintain lighting for its patrons who were exiting the theater at the time of the accident.

Opryland moved for summary judgment on two grounds: (1) That Opryland had no actual or constructive notice of the chair protruding into the aisle and stairway prior to Threet's fall, and (2) that the lighting in the theater at the time of the accident was sufficient for Threet to have seen the hazard which caused her to fall. Opryland relied on the affidavit of Laura-Grace Meredith, the person in charge of the theater at the time of the injury, who

2

stated that Opryland had no actual or constructive notice. The trial court granted summary judgment on the issue of lack of constructive notice and held under advisement the lighting issue, inviting expert opinions as to the lighting present at the time of the accident.

Opryland gave notice again of its Motion for Summary Judgment as to the lighting issue and submitted an affidavit from Dr. Francis M. Wells, an electrical engineer who gave an expert opinion as to the sufficiency of the lighting in the theater based on an electrical schematic of the theater house lights and the standards applicable to public buildings. The theater had been remodeled since the time of the accident so Dr. Wells' opinion was based solely on plans and specifications and not on personal knowledge of the lighting or its level at the time of Threet's fall. The trial court granted summary judgment on the lighting issue, finding no genuine issue of material fact as to the sufficiency of light present at the time of the fall.

## II. Standard of Review

According to Rule 56.03, summary judgment is to be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. Graves v. Anchor Wire Corp. of Tennessee, 692 S.W.2d 420 (Tenn.App. 1985); Briggs v. Riversound Ltd. Partnership, 942 S.W.2d 529, 532 (Tenn.App. 1996).

When the party seeking summary judgment makes a properly supported motion, the

3

burden then shifts to the nonmoving party to set forth specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 56.03, establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary. Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993).

In appeals from grants of summary judgment, the Court of Appeals must decide whether the court below correctly applied Rule 56.03 and in so doing, the Court must make an entirely fresh determination because only questions of law are presented; no presumption of correctness accompanies the trial court's decision. Hill v. Chattanooga, 533 S.W.2d 311(Tenn.App. 1975); Hunter v. Brown, 955 S.W.2d 49, 50 (Tenn.App. 1997).

### III. Summary Judgment

Threet appeals the portion of the trial court's order which granted summary judgment to Opryland on the issue of adequacy of lighting. Threet introduced evidence in the form of portions of her deposition and the affidavits of three eyewitnesses who were present at the time of the accident. Threet argues that none of the evidence offered by Opryland addressed the intensity or level at which the house lights were "on" at the time of the accident. There was no evidence that the lights were not controlled by a dimmer or rheostatic switch which would allow the lights to be "on," yet dimmed. Threet also argues that actual or constructive notice of the condition of the premises is not required under the "method of operation" theory. Threet contends that Opryland's method of operation of its lighting system created the specific hazard which proximately caused her fall.

In the answers to Threet's interrogatories, Opryland averred that there were three types of lighting in the theater which consisted of stage lights, spotlights and houselights. Opryland further asserted that the house lights consisted of approximately one hundred fifty-four 150 watt flood lights and remained on 24 hours per day.

4

In moving for summary judgment Opryland introduced expert testimony, in the form of an affidavit, on the lighting issues. The expert, a registered professional engineer, based his opinion upon the discovery responses of Threet and Opryland stating that the house lights were on, and upon the lighting diagram for the theater. Based upon the lighting diagram, the expert found that the house lighting consisted of one hundred fifty-four lights of 150 watts each. This being the case, the expert testified that the theater was in reasonably safe condition at the time of Threet's fall and there was sufficient light for a person to walk through the theater, even if that person encountered obstacles. The expert testified that the lighting complied with all applicable standards.

In opposition to Opryland's motion for summary judgment, Threet introduced affidavits from three eyewitnesses, namely Jolene Miley, Clyde Blount and Mrs. Clyde Blount. In each of the affidavits, a statement was made that the lights in the theater "dimmed" before Threet's fall, making it difficult to see the seat protruding into the aisle. None of the witnesses testified as to which set of lights was dimmed. However, in Threet's answers to the interrogatories of Opryland, Threet stated that the stage lights and spotlights were turned off, but the house lights remained on. Given the uncontradicted evidence that there were three types of lighting in the theater, the testimony taken as a whole is consistent with Threet's testimony that the stage lights and spotlights were turned off (causing the lighting in the theater to dim) while the house lights remained on.

As stated by the trial court in its order granting partial summary judgment, it is Threet's burden to show that the dimming of the lights, if proven, can provide a dangerous condition created by Opryland. It is uncontradicted that the theater contained three different types of lights. Opryland offered sworn testimony that the house lights remained on 24 hours a day. While the witnesses testified that the lighting in the theater "dimmed" before the fall, they did not testify as to which sets of lights dimmed nor was there any proof presented that the house lights were ever turned off. In fact, Threet herself stated, in her answers to Opryland's interrogatories, that the stage lights and spotlights were turned off, but that the house lights remained on.

5

Assuming Threet could prove that the lights in the theater were dimmed, the uncontradicted testimony is that the house lights in the theater remained on 24 hours per day. Threet presented no expert evidence to support her claim that the lighting that remained on provided a dangerous condition. While witnesses presented lay testimony that the lighting made it hard to see in the theater, the expert testimony provided by Opryland found the lighting met all applicable standards and that the theater was in reasonably safe condition at the time of the fall. Absent evidence to the contrary, summary judgment was proper.

Threet also argues that Opryland could be found negligent under a "method of operation" theory. Under this theory of premises liability, a jury issue is made where the evidence shows that the proprietor's method of operation creates a hazardous situation forseeably harmful to others. Martin v. Washmaster Auto Center USA, 946 S.W.2d 314, 318 (Tenn.App. 1996). Threet contends that Opryland employees and personnel, in complete charge of the lighting in the theater, operated its lighting system, and chose the method of operation of its lighting system by dimming the lights to an insufficient level for Threet to see the steps and aisle down which she was required to walk to exit the theater.

As discussed above, there was no testimony presented which contradicted the fact that the house lights remained on. The expert testimony established that such lighting complied with applicable standards and maintained the theater in a reasonably safe condition. Accordingly, Opryland could not be found negligent under the "method of operation" theory, as there was no proof that the lighting in the theater constituted a hazardous condition.

Threet failed to set forth evidence creating a genuine issue of material fact that the lighting at the time of Threet's fall created a hazardous condition. We therefore find that the trial court did not err in granting summary judgment to Opryland and dismissing the complaint of Threet.

6

## IV. Conclusion

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.