Sabrina CORLEY, Plaintiff–Appellee,

v.

WAL–MART STORES EAST, LP,
Defendant–Appellant.

No. 15–5202.

United States Court of Appeals,
Sixth Circuit.

Jan. 4, 2016.

Before: KEITH, CLAY, and WHITE,
Circuit Judges.

CLAY, Circuit Judge.

Defendant Wal–Mart Stores East, LP ("Wal–Mart") appeals the district court's denial of its renewed motion for judgment as a matter of law. This negligence action brought pursuant to diversity jurisdiction, 28 U.S.C. § 1332(a), arises out of Plaintiff Sabrina Corley's ("Corley") slip and fall at a Wal–Mart store in Antioch, Tennessee. For the reasons that follow, we **AFFIRM** the district court's judgment.

**I.**

On November 7, 2011, Corley entered Wal–Mart's Antioch, Tennessee store with her minor son. Video surveillance footage shows that at approximately 3:39:43 p.m., Wal–Mart employee Katrina Smith walked down the main aisle of the store, passing the location where Corley would eventually fall. One minute later, at approximately 3:49:19 p.m., Corley is seen walking down the main aisle of the store after having just slipped and fell on a puddle of water in Aisle 6. After Corley reported her fall to Wal–Mart, store employees converged at the accident site and proceeded to clean the spill. The clean-up efforts seen on the video indicate that the spill covered a large area. Store employees confirmed that there was water on the floor at the accident site.

Pursuant to Wal–Mart's policy, if video surveillance captures an incident in the store, Wal–Mart preserves footage from one hour before the incident until the incident occurs. Because no camera captured Corley's slip and fall, Wal–Mart preserved and produced video footage of the corner of Aisle 6 from one hour before the incident was reported until one hour later. None of the footage actually captured anything in Aisle 6, where Corley fell. Nor

does the video show how the water got on the floor. A Wal–Mart employee took photographs of the spill, but Wal–Mart also failed to preserve those photographs.

Corley subsequently filed this diversity suit alleging that Wal–Mart was negligent in failing to maintain safe premises at its Antioch store. Specifically, Corley alleged that Wal–Mart had constructive notice of the spilled water, failed to clean it up, and she was injured as a result. At the close of Corley's case-in-chief, Wal–Mart moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Wal–Mart argued that because the video did not capture anything in Aisle 6, it was not possible to tell how long the water had been on the ground without speculating.

The district court denied Wal–Mart's motion and rejected its argument that the jury would have to speculate in order to determine whether Wal–Mart had constructive notice. The district court stated that the jury, after viewing the video, could make the determination that the water was on the floor longer than the time shown in the video. The district court pointed out that because the video showed only the hour before the accident, the jury could reasonably conclude that the spill was created at a time not shown in the video.

After the jury found Wal–Mart ninety percent at fault for the accident and awarded Corley $525,000 in damages, Wal–Mart renewed its motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. The district court denied Wal–Mart's renewed motion for judgment as a matter of law, holding that Corley presented sufficient evidence that Wal–Mart should have been aware of the hazardous condition.

## II.

We review a district court's denial of a renewed motion for judgment as a matter of law *de novo. Radvansky v. City of Olmsted Falls,* 496 F.3d 609, 614 (6th Cir. 2007). When sitting in diversity, we apply the substantive law of the forum state, in this case Tennessee. *Morales v. Am. Honda Motor Co.,* 151 F.3d 500, 506 (6th Cir.1998). Under Tennessee law, when considering a motion for a directed verdict in a jury case, we "must consider the evidence most favorably for the plaintiff, allow all reasonable inferences in plaintiff's favor and disregard all counteracting evidence, and, so considered, if there is any material evidence to support a verdict for plaintiff, [we] must deny the motion." *City of Columbia v. C.F.W. Const. Co.,* 557 S.W.2d 734, 740 (Tenn.1977).

In Tennessee, to succeed on a suit in negligence, the plaintiff must show (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the plaintiff suffered some injury or loss, (4) cause in fact, and (5) proximate cause. *McClung v. Delta Square Ltd. P'ship,* 937 S.W.2d 891, 894 (Tenn.1996). Additionally, to hold an owner or operator of premises liable in negligence for a dangerous or defective condition on its premises, the plaintiff must show either (1) that the premises owner or operator caused the condition, or (2) if not, "that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Blair v. West Town Mall,* 130 S.W.3d 761, 764 (Tenn.2004) (citing *Martin v. Washmaster Auto Ctr., U.S.A.,* 946 S.W.2d 314, 318 (Tenn.Ct.App.1996)).

"[C]onstructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of

the condition." *Blair,* 130 S.W.3d at 764 (citing *Simmons v. Sears, Roebuck & Co.,* 713 S.W.2d 640, 641 (Tenn.1986)); *see also Washmaster Auto Ctr.,* 946 S.W.2d at 318. Additionally, a plaintiff can prove constructive notice through "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." *Blair,* 130 S.W.3d at 765–66; *see also Washmaster Auto Ctr.,* 946 S.W.2d at 320. The recurring conduct or continuing condition must be specific to the location where the incident at issue occurred. That is, notice of a general or continuing condition in one area of the premises does not necessarily support a finding of constructive notice as to another area. *See Blair,* 130 S.W.3d at 767; *Martin v. Wal–Mart Stores, Inc.,* 159 Fed. Appx. 626, 629–30 (6th Cir.2005) (unpublished).

In this case, Corley proceeds under the constructive notice theory of liability. She claims that the unsafe condition existed at the time that Smith walked by the accident site, and therefore Wal–Mart should have known about it and fixed the problem. Corley argues that one conclusion from the surveillance video is that the water was on the floor throughout the period of time captured on tape, or so a reasonable jury could conclude. The district court accepted this argument. Wal–Mart admits that if there was water on the floor when Smith walked by, then she should have noticed it and cleaned it up. But Wal–Mart denies that there was water on the floor when Smith passed.

We see two plausible explanations as to what happened here. First, as Corley argues, the puddle was on the floor when Smith walked right past the accident site. Second, as Wal–Mart argues, the puddle was not on the floor when its employee walked by, and instead, was created just moments before the accident. Corley must persuade us that a jury could reasonably find the first explanation, rather than the second, more likely than not describes what occurred. This is because if there are two or more plausible explanations as to how an event happened, and no one more likely than the other, the explanations remain conjecture only. And conjecture alone is not enough to prevail under Tennessee law. *See, e.g., Hardesty v. Service Merchandise Co., Inc.,* 953 S.W.2d 678, 682 (Tenn.Ct.App.1997) (holding that "[w]here there is a complete absence of proof as to when and how a dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements.").

Corley probably would not have a case without the surveillance video. But that video far from makes her case—its visual quality is not sufficient to determine whether there was any water on the floor during the hour before the fall. And before the accident, numerous people, including Corley herself, walked near the area of the spill. Not one person appeared to look down, change directions, or otherwise show any signs of seeing a puddle. So, could a jury conclude from that evidence that the water was more likely than not on the floor when Smith walked by forty seconds earlier?

We find that yes, the surveillance video, coupled with the inferences drawn in Corley's favor, sufficiently made this a jury question. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, based upon what it saw and heard in the

courtroom, the jury was free to consider or reject Corley's theory that the water was on the floor throughout the period of time captured on tape. *See Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir.2015) (holding that if a plaintiff's evidence alone is sufficient to create a genuine issue of material fact, then summary disposition as a matter of law is inappropriate).

Moreover, inasmuch as it cannot be known how much weight the jury gave to their own conclusions as derived from their viewing of the video, we cannot conclude as a matter of law that the video quality is so poor that a reasonable factfinder would be unable to conclude that none of the passing customers were responsible for the spill. And if the jury found that none of the passing customers were responsible, a reasonable jury could have found that the puddle was pre-existing and was present when Smith walked by, and Wal–Mart therefore should have known about it. Under these circumstances, a motion for judgment as a matter of law in favor of Wal–Mart is inappropriate.

### III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

HELENE N. WHITE, Circuit Judge, concurring.

I join in the affirmance but write separately to clarify several aspects of the record. Because this appeal concerns the sufficiency of the evidence to support the verdict, an accurate account of the testimony is particularly important. No evidence was presented at trial that Corley actually fell. *But see* Maj. Op. at 210, 210–11. Corley's complaint alleged, and she testified at trial, that while she was pushing her shopping cart, her right foot slipped on water on the floor and she felt a pop in her knee. PID 8, 1156, 1164–66. Wal–Mart

surveillance videos played for the jury show Corley's right foot slipping and her walking with a limp after the slip. *See* thirteen-second video titled "Actual Customer Slip," and video titled "One Hour Prior" at 3:39:00 to 3:40:30. The district court's opinion denying Wal–Mart's motion for judgment as a matter of law correctly states that it was undisputed at trial that Corley slipped and twisted her knee. PID 1397–98.

Additionally, contrary to the majority's assertion that "none of the footage actually captured anything in Aisle 6," Maj. Op. at 210, Wal–Mart surveillance videos in the record captured the portion of aisle six where Corley slipped and twisted her knee, and show it happening. Both Corley's counsel and Wal–Mart's counsel stated in opening statement that Wal–Mart's surveillance videos captured Corley's slip, PID 1037, 1049–50, and Wal–Mart's memorandum in support of its motion for judgment as a matter of law states, "The video shows the plaintiff slip as she exits aisle six." PID 751, 1402. The district court correctly stated that "both the slip and employees' efforts to clean up the spill were captured on videotape." PID 1398.

Lastly, there is no record support for the majority's statement that the water on which Corley slipped covered "a large area." Maj. Op. at 210. Corley testified that the water she slipped on was about the size of a plate. PID 1194. Wal–Mart surveillance videos depict employees wiping up the spill at the end of aisle 6 and extending into the main aisle, but there was no testimony that the spill itself covered a large area and the water cannot be seen on the videos.