JOEY BROWN, as next friend )
and natural guardian of )
MITCHELL W. BROWN, )
)
      Plaintiff/Appellee, )
)    Appeal No.
)    01-A-01-9705-CV-00217
VS. )
)    Lawrence Circuit
)    No. CC-55-96
WAL-MART DISCOUNT CITIES, )
)
      Defendant/Appellant. )

FILED

February 6, 1998

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CIRCUIT COURT OF LAWRENCE COUNTY
AT LAWRENCEBURG, TENNESSEE

THE HONORABLE JIM T. HAMILTON, JUDGE

W. CHARLES DOERFLINGER
P. O. Box 692
8 Public Square
Lawrenceburg, TN 38464
    Attorney for Plaintiff/Appellee

TRACY SHAW
CAROLYN E. UNDERWOOD
300 James Robertson Parkway
Court Square Building
Nashville, TN 37201-1107
    Attorney for Defendant/Appellant

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
KOCH, J.
BUSSART, J.

# O P I N I O N

In this slip and fall case in which a child slipped on some ice cubes in the vestibule of a large department store, the jury returned a verdict for the plaintiff but attributed 70 % of the fault to the unknown person who placed or dropped the ice on the floor. Ruling on a post-trial motion, the trial judge held that the store's fault was 100% because the plaintiff could not sue the unknown tortfeasor. On appeal, the defendant asserts that there is no evidence to support the verdict and that the trial judge erred in modifying the jury's verdict with respect to the degree of fault. We find that there is evidence from which the jury could have found that the store was negligent and that the store cannot attribute part of the fault to the unknown tortfeasor. We, therefore, affirm the lower court's judgment.

## I. Factual and Procedural Background

On January 3, 1995, three-year-old Mitchell Brown slipped on ice and water that had spilled out of a cup in the vestibule of the Wal-Mart store in Lawrenceburg, Tennessee. There was no evidence as to how the ice came to be on the floor or who left the drink in the vestibule. It was clear that the ice had spilled out of a cup from the Wal-Mart drink dispenser in the store's snack bar where self-service drinks were available. The ice was still hard at the time of the accident.

Prior to trial, Defendant's attorney announced his intent to argue that the jury should assign fault to the unknown person who left the cup in the vestibule. Neither Plaintiff's counsel nor the trial court objected, and at the close of the trial, the judge's instructions to the jury encompassed the comparative fault of an unknown tortfeasor. The court told the jury that they must "determine the fault, if any, of each of the parties . . . what I'm talking about when I say 'parties' in this case is the unknown - - what the law calls an unknown tortfeasor . . . . If you find that more than one of the parties are at fault, you will then compare the fault of the parties. To do this, you will need to know the definition of fault. A party is at fault if you find by a preponderance of the evidence that the party was negligent; and that the negligence

was a proximate cause of the injury or damage for which its claim is made."[1]  The court then gave the jury a verdict form with the "unknown tortfeasor" listed as a potential person to whom it might apportion fault and explained to them that this was "the unknown person who deposited the cup."

The jury returned a verdict finding the total amount of damages to be $2,625.00 and assigning 70% fault to an unknown tortfeasor and 30% to Defendant. As a result, the court ordered that Plaintiff recover $787.50 against Defendant. Plaintiff then filed a motion for new trial in which he argued that the court erred by allowing the jury to consider the guilt of a nonparty tortfeasor.

In its final order, the court stated that it had "erred in allowing Defendant to include as unknown tortfeasor, (the person or persons responsible for leaving the cup of ice on the floor at Wal-Mart), for the jury to assign a percentage of fault."  In so ruling, the court stated that the *McIntyre v. Balentine* doctrine allows the jury to assign fault to an unnamed tortfeasor who is known to the defendant.  Here, "[t]here is no way the Plaintiff in the instant case could sue and obtain judgment against whom ever left the cup of ice on the floor at Wal-Mart, because no one knows who to sue."  Since the court was satisfied with the monetary award to Plaintiff, it overruled the motion for new trial and stated that "the judgment of $2625 [would] remain in tact" thereby effecting a reapportionment of 100% of the fault to Wal-Mart.

To reiterate, this case presents several issues, one of which involves the jury's consideration of the fault of a potential person who spilled the ice on the floor in the Wal-Mart vestibule.  If we determine that the jury should not have been instructed to consider the fault of this "unknown tortfeasor" as termed by the trial

---

[1]While the propriety of this jury instruction is not at issue, we note that our supreme court has rejected the proposition that proof of proximate cause is necessary to "shift the blame" to a known nonparty.  In *George v. Alexander*, 931 S.W.2d 517, 521 (Tenn. 1996), the court stated that "'blame-shifting' in a negligence context actually has to do with the element of causation in fact.  Once the defendant introduces evidence that another person's conduct fits this element, it has effectively shifted the blame to that person."  If this were not so, a legitimate issue in this case would be the existence of proof of the duty, breach of duty and proximate cause with regard to the unknown tortfeasor.  *See Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252 (Tenn. 1997) *infra*, note 2.

court, we must then decide whether the trial court was correct in reallocating 100% of the fault to Defendant Wal-Mart upon its consideration of Plaintiff's motion for a new trial. Finally, Defendant has argued that, regardless of the fault of an unknown party, the evidence does not support a finding of Wal-Mart's negligence as there is no proof that Wal-Mart had constructive notice of the dangerous condition giving rise to Plaintiff's injury.

## II. Evidence of Negligence

We turn first to Defendant's contention that the trial court erred in denying its motion for a directed verdict because there was no proof at trial from which a jury could reasonably infer that Wal-Mart's conduct was negligent. A directed verdict is appropriate when the evidence supports only one conclusion. *Williams v. Brown*, 860 S.W.2d 854, 857 (Tenn. 1993). However, "[a] case should go to the jury, even if the facts are undisputed, if reasonable persons could draw conflicting inferences from the facts." *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d 423, 426 (Tenn. Ct. App. 1994) (citing *Sauls v. Evans*, 635 S.W.2d 377, 379 (Tenn. 1982)). The jury is permitted to reasonably infer facts from circumstantial evidence, and these inferred facts may be the basis of further inferences of the ultimate fact at issue. *Benson v. H. G. Hill Stores, Inc.*, 699 S.W.2d 560, 563 (Tenn. Ct. App. 1985) (citations omitted). "An inference is reasonable and legitimate only when the evidence makes the existence of the fact to be inferred more probable than the nonexistence of the fact." *Underwood*, 892 S.W.2d at 426. On the other hand, the jury is not permitted to engage in conjecture, speculation, or guesswork as to which of two equally probable inferences is applicable. *Stringer v. Cooper*, 486 S.W.2d 751, 756 (Tenn. Ct. App. 1972).

"Where there has been a verdict for the plaintiff approved by the Trial Judge, in considering a defendant's motion for a directed verdict the Court of Appeals must look at all the evidence, construe it most favorably to the plaintiff, take the

plaintiff's evidence which supports his theory as true, discard all countervailing evidence and indulge all reasonable inferences to uphold the verdict." *Martin v. Washmaster Auto Ctr., U.S.A.,* 946 S.W.2d 314, 316 (Tenn. Ct. App. 1996) (quoting *Tennessee Liquefied Gas Corp. v. Ross*, 450 S.W.2d 587, 588 (Tenn. Ct. App. 1968)). Pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure, this court's responsibility is to determine whether there is any material evidence to support the verdict. We thus review the proof in its most favorable light to Plaintiff to determine whether there exists any material evidence to support the jury's verdict against Wal Mart.

The undisputed proof shows that three-year-old Mitchell Brown accompanied his mother and sister into Wal-Mart's vestibule where he slipped on ice spilled from a cup from Wal-Mart's self-service drink dispenser. Mark Morgan, who was the assistant manager at the Wal-Mart at the time of the incident, testified that though Wal-Mart's policy was to limit drinks to the snack area, he was aware that customers carried their drinks throughout the store. He stated that it was economically impossible to assign an employee to each customer to ensure that drinks not be carried throughout the store. When questioned about this policy, Kevin Brewer, a Wal-Mart employee who was on duty at the time of the accident, testified that he had never stopped anyone from coming out of the snack area and that if he did "go up to somebody to to [sic] tell them to go back and sit down, [he] could get fired." Mr. Morgan testified that there was no policy against customers purchasing drinks and exiting the store with these drinks either through the vestibule or another of the exits.

Mr. Morgan stated that Wal-Mart employees were trained to be on the lookout for dangerous conditions. The management awarded the employees with money raffles when they went for periods of time without accidents. In addition, there was in place a safety sweep program in which each associate was responsible to check his area for paper, popcorn, or other hazards approximately every thirty

minutes. Mr. Morgan testified that Kevin Brewer was the associate responsible for the vestibule at the time of the incident. According to Mr. Morgan, Mr. Brewer was to check for dangerous conditions every time he brought shopping carts in from the outside parking lot.

Mr. Brewer also testified at trial that the vestibule was one of his main responsibilities. His duties in the vestibule included making sure that nothing was spilled, that all the trash was picked up and that there were no hazards. He said that, in the afternoon, he came in and out of the vestibule every five minutes or less with shopping carts and was continually on the lookout for spills. Mr. Brewer testified that he had been through the vestibule "probably within the last five minutes" preceding Mitchell Brown's fall. He did not see the ice on the floor until after the child had fallen, at which time he cleaned up the ice. It was Mr. Brewer's opinion that the ice cubes had not been there very long as "they were still in ice form . . . still real hardened." When opposing counsel pointed out several times that Mr. Brewer had not testified this way the first time this case was tried, he responded that he did not remember how he previously testified.

Lisa Brown, Mitchell's mother, testified that she entered the Wal-Mart and immediately proceeded to the pay phone in the vestibule to call her husband. As she walked to the phone, she saw a Wal-Mart employee open the door from the store to let an elderly customer into the vestibule. While at the phone, she noticed that her children were standing in the middle of the ice at which time she beckoned them toward her warning them to be careful. It was at this time that Mitchell fell.

While business proprietors, such as Wal Mart, are not insurers of their patrons' safety, they are required to use due care under all circumstances. *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 822 (Tenn. Ct. App. 1992). In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, it must be shown that the condition (1)

was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, there must be actual or constructive notice on the part of the owner or operator that the condition existed prior to the accident. *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995); *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. Ct. App. 1980). Constructive knowledge can be shown by proving the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of such condition. *Simmons v. Sears, Roebuck and Co.*, 713 S.W.2d 640, 641 (Tenn. 1986).

Because the record below is devoid of proof that Wal-Mart either created or had actual notice of the dangerous condition giving rise to Mitchell Brown's injury, negligence must rest on a finding that Wal-Mart had constructive notice of the fact that the ice was on the floor in the vestibule. While this is certainly a close case, we find that there is material evidence to support the verdict. The jury could have reasonably inferred from certain circumstantial evidence that Wal-Mart employees should have known of the dangerous condition. Ms. Brown testified that she saw a Wal-Mart employee open the door between the store and vestibule just prior to Mitchell's fall. Though Mr. Brewer stated that he had passed through the vestibule within the past five minutes, we think the jury could have inferred that the dangerous condition was apparent but had been overlooked by the Wal-Mart employee.

### III. Phantom Tortfeasor

*McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), was the landmark decision in which our supreme court adopted a modified form of comparative fault. The grand principle adopted in *McIntyre* was that a "particular defendant will henceforth be liable only for the percentage of plaintiff's damages occasioned by that defendant's negligence . . . ." *Id. at 58.* With regard to nonparties, the court made the following statement:

- 7 -

> [F]airness and efficiency require that defendants called upon to answer allegations in negligence be permitted to allege, as an affirmative defense, that a nonparty caused or contributed to the injury or damage for which recovery is sought. In cases where such a defense is raised, the trial court shall instruct the jury to assign this nonparty the percentage of the total negligence for which he is responsible. However, in order for a plaintiff to recover a judgment against such additional person, the plaintiff must have made a timely amendment to his complaint and caused process to be served on such additional person. Thereafter, the additional party will be required to answer the amended complaint. The procedures shall be in accordance with the Tennessee Rules of Civil Procedure.

*Id.*

From the trial court 's final order, it can be inferred that the court made a post-trial determination that *McIntyre* allows the jury to assign fault to an unnamed tortfeasor only when that tortfeasor is known to the defendant and can, itself, be sued and held responsible for its portion of the judgment. The trial court thus found that the allocation of 70% fault to the unknown tortfeasor who may have spilled the ice was in error. We agree for reasons hereinafter stated.

In the wake of Tennessee's adoption of comparative negligence, our courts have been left with the task of restructuring our negligence law in a manner consistent with this new scheme of comparative fault. *See, e.g.*, *Owens v. Truckstops of Am.*, 915 S.W.2d 420 (Tenn. 1996) and *Bervoets v. Harde Ralls Pontiac-Olds, Inc.*, 891 S.W.2d 905 (Tenn. 1994) (cases in which the supreme court addressed issues of contribution, joint and several liability and indemnification in light of comparative fault). An issue left unresolved by the courts is the apportionment of fault to a "phantom tortfeasor" -- "[a] person or entity whose negligence contributed to the plaintiff's injury but who was not joined as a defendant . . . because his or her identity is unknown." 2 Arthur Best, *Comparative Negligence* § 13.20 (1997). While the post-*McIntyre* decisions have not specifically addressed the issue of a phantom tortfeasor, our supreme court has dealt with the similar issue of a nonparty who could not be joined because it was immune from suit. *Ridings v. Ralph M. Parsons Co.*, 914

S.W.2d 79, 80 (Tenn. 1996). In so doing, we believe that the court retreated from its grand principle stated in *McIntyre* and espoused the policy of allowing the plaintiff to recover all of his or her damages from defendants not totally at fault when the plaintiff could not sue the other tortfeasor.

In *Ridings*, the court addressed the issue of whether the defendants in a suit based on negligence and strict liability could assert as an affirmative defense that the plaintiff's employer caused or contributed to the plaintiff's injuries and damages, notwithstanding the fact that the employer was immune from liability because the injuries were covered by the workers' compensation law. The defendants argued "that excluding the plaintiff's employer from those persons to whom fault may be attributed violates the *McIntyre* principle that defendants will be 'liable only for the percentage of a plaintiff's damages occasioned by that defendant's negligence.'" *Ridings*, 914 S.W.2d at 80 (quoting *McIntyre,* 833 S.W.2d at 58). It was the defendants' position "that fault can be attributed to the employer, and the liability of the defendants can be decreased accordingly, without the imposition of liability upon the employer." *Ridings*, 914 S.W.2d at 81.

The supreme court disagreed with the defendants finding that the "rationale of *McIntyre* postulates that fault may be attributed only to those persons against whom the plaintiff has a cause of action in tort." *Id.* The court reasoned that when the *McIntyre* court stated that "fairness and efficiency require that defendants called upon to answer allegations in negligence be permitted to allege, as an affirmative defense, that a nonparty caused or contributed to the injury or damage for which recovery is sought," it meant only those nonparties "against whom the plaintiff has a cause of action." *Id.* at 81-82 (citing *McIntyre,* 833 S.W.2d at 58). The court concluded that "[l]imiting the parties to whom fault may be attributed to those subject

to liability, accomplishes the policy objectives of fairness and efficiency." *Ridings,* 914 S.W.2d 83.[2]

In so holding, the *Ridings* court did not preempt the possibility that a defendant's fault might be reduced by the fault attributable to a nonparty so long as that nonparty was subject to liability. Noting that "the plaintiff will bear the loss for any liability that it fails or is unable to assert and any judgment that cannot be enforced," the court cited a medical malpractice case in which the jury apportioned 10% of the liability to the plaintiff, 45% to the defendant and 45% to a non-resident physician who was not a party to the suit. *Id.* at 83 (citing *Volz v. Ledes*, 895 S.W.2d 677 (Tenn.1995)). The supreme court in *Volz* affirmed the judgment against the defendant for 45% of the total damages. Regarding *Volz*, the *Ridings* court commented that "[e]ven though the plaintiff had a cause of action against the non-resident tortfeasor, that cause of action was not asserted and the proportion of the loss attributed to that defendant was borne by the plaintiff." *Ridings*, 914 S.W.2d at 84 n.9 (citing *Volz*, 895 S.W.2d at 680).

In *Turner v. Jordan*, ___ S.W.2d ___ (Tenn. 1997), the court announced another principle limiting the ability of a defendant to shift some of the responsibility for a plaintiff's injuries to another defendant whose actions were a major <u>cause in fact</u> of the harm. In *Turner*, the harm was inflicted by the intentional acts of a mental patient hospitalized under the care of a psychiatrist. The plaintiff, a nurse on duty in the hospital, sued the psychiatrist for failing to impose restraints on the patient that would have prevented the attack. The doctor pled comparative fault under Rule 8.03 of the Tennessee Rules of Civil Procedure, and the trial judge instructed the jury to

---

[2]The court may have limited the reach of *Ridings* in the subsequent case of *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252 (Tenn. 1997). Presented with a similar situation involving the introduction of evidence of an immune employer's negligence, the court "decline[d] the defendants' invitation to reverse *Ridings*." *Id.* at 256. However it held "that products liability defendants in a suit for personal injuries based on allegations of negligence and strict liability in tort may introduce relevant evidence at trial that the plaintiff's employer's alteration, change, improper maintenance, or abnormal use of the defendant's product was the **cause in fact** of the plaintiff's injuries." *Id.* at 256-57 (emphasis added). While "the defendants may not take the legal position that the employer's actions were the legal cause of the plaintiff's injuries," it could introduce evidence showing said actions to be the cause in fact as the jury "may consider all evidence relevant to the event leading up to the incident that injured the plaintiff." *Id.* at 257.

apportion the fault between the doctor and the patient. On appeal, the supreme court held that "the conduct of a negligent defendant should not be compared with the intentional conduct of another in determining comparative fault where the intentional conduct is the forseeable risk created by the negligent tortfeasor." *Id.* slip op. at 17.

We think this case represents another principle limiting the ability of a defendant to shift responsibility for a plaintiff's injuries. The important thing is the ice spilled out and created a dangerous condition that, according to the jury, the premises owner should have discovered and eliminated. Under those conditions the owner should not be able to attribute any of the fault to the so called "phantom tortfeasor" unless the owner can produce clear and convincing evidence of the phantom's existence.

Comparative fault is an affirmative defense, *see* Rule 8.03, Tenn. R. Civ. P.; therefore a defendant wishing to escape part or all of the responsibility for the plaintiff's injuries must plead "the identity or description of any other alleged tortfeasor." *Id.* If then, the plaintiff wishes to name the other tortfeasor(s), section 20-1-119 of the Tennessee code provides the framework for extending the action to the others identified by the original defendant. The same code section provides a ninety day window to name the additional defendants if the statute of limitations as to them has run or is about to run.

Where the original defendant cannot identify or describe the other alleged tortfeasors, however, the original plaintiff will not be able to join them and require them to answer for their share of the plaintiff's injuries. In that case, the plaintiff can admit or deny the existence of the "phantom tortfeasor(s)," if required to do so by the court under Rule 7.01 of the Rules of Civil Procedure; but, in any event, the burden of proof will remain on the original defendant to establish that part of the responsibility for the plaintiff's injuries should be shifted to the unknown tortfeasor(s). Since the phantom tortfeasor defense can be easily abused, we think the original defendant should be required to prove the existence of a third party whose fault

contributed to the plaintiff's injuries by clear and convincing evidence. It follows that, prior to trial, plaintiffs should be permitted to test the strength of the defendant's evidence of the existence of a phantom tortfeasor using either a motion for partial summary judgment or motion in limine. If the defendant cannot produce clear and convincing proof of the existence of the phantom tortfeasor, the trial court should not permit the evidence or comment before the jury.

Since Wal-Mart did not identify the other tortfeasor and did not prove the existence of another tortfeasor by clear and convincing evidence, we think the trial judge correctly attributed all the fault to the original defendant.

Cases involving unknown tortfeasors have arisen most often in the context of uninsured motor vehicle coverage. *See, e.g., Bruno v. Blankenship*, 876 S.W.2d 294, 296 (Tenn. Ct. App. 1992). Tennessee law provides that an insured can recover under his or her uninsured motorist policy for damages caused by an unknown driver if "[a]ctual physical contact shall have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured; or . . . [t]he existence of such unknown motorist is established by clear and convincing evidence, other than any evidence provided by occupants in the insured vehicle." Tenn. Code Ann. § 56-7-1201(e)(1)(A) & (B)(1997 Supp.). Though this statute acknowledges the fault of an unknown party, it does not involve the apportionment of fault among joint tortfeasors. Thus, we clarify that our opinion has no bearing on the laws which govern insurance coverage for damages caused by unknown motorists.

## IV. Trial Court's Restructuring of the Jury Award

Now that we have determined that the trial court correctly concluded that the jury should not have considered the potential fault of an unknown tortfeasor, we must decide whether the court appropriately remedied this error. As stated, Plaintiff,

citing the jury's consideration of an unknown tortfeasor, filed a motion for a new trial which was denied by the court. However, in overruling said motion, the court asserted its satisfaction with the jury's monetary award and ordered that this award remain in tact. The court thereby effectively ordered that 100% of the jury's monetary award be paid by Defendant Wal-Mart.

Defendant argues that the court had no authority for its action for the following reasons. First, neither party requested the relief granted by the court. Defendant contends that while the Rules of Civil Procedure allow the court, on its own initiative, to alter or amend a judgment, the court did not do so within the prescribed time period of 30 days. Tenn. R. Civ. P. 59.05. Next, Defendant contends that there never was a judgment in the amount of $2,625.00. Finally, Defendant argues that the trial court is not permitted to reallocate percentages of fault as found by the jury.

Initially, we reject Defendant's first argument. Tennessee Rule of Civil Procedure 59.05 empowers a court to "on its own initiative . . . alter or amend the judgment." As for the timeliness of this motion, Plaintiff did file a motion for new trial within thirty days of the entry of the judgment as prescribed by Rule 59.02 of the Rules of Civil Procedure. Almost seven months after the motion for new trial was filed, the court issued its final order directing that Defendant pay 100% of the amount of damages determined by the jury. As stated, the rules provide that a court may alter or amend a judgment on its own initiative within thirty days after entry of that judgment. Tenn. R. Civ. P. 59.05. The question becomes whether, in light of a timely-filed motion for new trial, the thirty-day period for the court to alter or amend the judgment was tolled. Based upon the guidance we receive from this court's opinion in *Grissim v. Grissim*, 637 S.W.2d 873 (Tenn. Ct. App. 1982), we hold that it was.

In *Grissim*, each party filed a timely motion to alter or amend the trial court's order. Almost four months after the parties' motions were filed, the court

overruled said motions and, at the same time, granted a new trial on its own initiative.

On appeal, the appellant made the following argument:

> [T]he power of a Trial Judge to grant a new trial on his own motion expires thirty (30) days after entry of judgment and that such power is not extended by post trial motions except to the extent of the relief requested in such motions. That is, if no new trial is requested in a post trial motion, then no new trial may be granted more than thirty (30) days after judgment.

*Id.* at 874. However, the court of appeals disagreed citing the "long established public policy of this State favoring the opportunity to correct judicial actions by appeal or otherwise." *Id.* at 875. The court reasoned as follows:

> [I]f part of a judgment is challenged by a post trial motion and the power of the trial court is extended to change such challenged part, then the trial court has not finally adjudicated all of the claims, rights and liabilities; and, the judgment is subject to revision (including setting aside) before entry of final judgment adjudicating all claims, rights and liabilities of the parties.

*Id.*

In an unpublished opinion of this court, the rule of *Grissim* was extended to a situation which is procedurally like the case at bar. *General Elec. Credit Corp. v. Allen & Bean, Inc.*, No. 87-165-II, 1987 WL 19311 (Tenn. Ct. App. 1987). In *General Electric*, the court denied plaintiff's motion for a new trial, and at the same time, altered the judgment against the defendant. *Id.* at \*2. Though this *sua sponte* alteration occurred outside of the thirty days following the judgment, the court held that "[w]hile the procedural situation in the present case is the reverse of that in *Grissim*, under the reasoning of *Grissim*, it would appear that a motion for new trial would preserve the power of the Trial Court to alter or amend." *Id.* at \*3. We therefore hold that in the case at bar, Plaintiff's motion for a new trial effectively preserved the power of the court to alter the judgment as it did.

Defendant next argues that the trial court is not permitted to reallocate percentages of fault as found by the jury. We agree. *See Turner v. Jordan*, ___ S.W.2d ___ (Tenn. 1997). But we think *Turner* is inapposite because this is not a

situation in which the court was usurping the jury's role as fact finder by reallocating percentages of fault. We recognize that the allocation of fault is a factual question for the jury. However, in this case the court was not determining the factual question of the percentages of fault. Rather, the court was assigning 100% of the damages assessed by the jury to Defendant in light of the legal conclusion that Defendant's fault could not be shared with an unknown tortfeasor.

In the case at bar, there is a significant distinction between the legal issues and the fact issues, the latter of which involve the existence of Wal-Mart's negligence and the amount of Plaintiff's damages. The jury made these factual determinations, and then the court made its post-trial decision that blame should not have been shifted to an unknown tortfeasor, based on the legal conclusion that the parties to whom fault may be attributed should be limited to those subject to liability. It was pursuant to this legal finding that the court amended the judgment such that Defendant Wal-Mart was responsible for 100% of the damages determined by the jury. While we do not endorse completely the trial judge's legal conclusion, we think he reached the right result in this case.

Finally, we turn to Defendant's assertion that there never was a judgment in the amount of $2,625.00. There is no basis for this argument, for in the final judgment the court stated that "[t]he jury further found that the total amount of damages sustained by plaintiff was $2,625.00." It is true that the court ordered Defendant to pay only $787.50 because it assigned Defendant only 30% of the fault. However this does not change the jury's finding with regard to Plaintiff's damages.

## V. Conclusion

In light of the proof presented at trial and the inferences that can be drawn therefrom, we conclude that there exists material evidence to support the jury's verdict against Wal-Mart. In addition, we affirm the trial court's finding that the law

precludes that fault be attributed to an unknown party in this case. Finally, in light of a jury finding which conflicted with this legal conclusion, the lower court did not err in altering the judgment such that Defendant be responsible for 100% of Plaintiff's damages. Tax the costs on appeal to Wal-Mart Discount Cities.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WALTER W. BUSSART, JUDGE