IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 13, 2003 Session

## SHAMERY BLAIR, ET AL. v. WEST TOWN MALL

Appeal from the Circuit Court for Knox County
No. 1-229-00      Dale C. Workman, Judge

FILED APRIL 4, 2003

No. E2002-02005-COA-R3-CV

Shamery Blair ("Plaintiff") sued West Town Mall ("Defendant") claiming she was injured when she slipped and fell on slick oil spots as she was exiting the mall. Defendant filed a motion for summary judgment relying on Plaintiff's deposition testimony that, *inter alia*, she did not know how long the slippery substance had been on the pavement, where the substance came from, or if anybody at the mall was aware of its presence. Defendant filed no affidavits. Plaintiff claimed Defendant's parking lot was part of Defendant's "method of operation" in an attempt to establish constructive notice by Defendant. The Trial Court concluded Defendant's parking lot was not part of Defendant's method of operation. There otherwise being no proof Defendant had either actual or constructive notice of the condition of the pavement, the Trial Court granted Defendant's motion for summary judgment. Plaintiff appeals, and we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Circuit Court Reversed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined in separate concurring opinions.

James A.H. Bell and Richard L. Burnette, Knoxville, Tennessee, for the Appellants Shamery Blair and Titus Blair.

Howard E. Jarvis and Chad D. Emerson, Knoxville, Tennessee, for the Appellee West Town Mall.

## OPINION

## Background

Plaintiff filed this lawsuit alleging that on April 17, 1999, she was shopping at Defendant's mall and as she was exiting, she slipped on slick oil spots and fell on the pavement. Plaintiff claimed she could not see the oil spots and was not otherwise aware of their presence prior to falling. Plaintiff alleged Defendant, as owner of the premises, failed to exercise ordinary care and diligence in maintaining its premises in a safe condition for its customers. According to Plaintiff, Defendant failed to exercise its duty of care to inspect and maintain the pavement in the parking lot in a reasonably safe and suitable condition. In the alternative, Plaintiff alleged Defendant knew or should have known that numerous buses dropped customers off and picked them up at the entrance where Plaintiff fell and, therefore, Defendant either knew or should have known of the presence of the oil spots and failed to clean them up. Plaintiff sought damages not to exceed $500,000.[1]

Defendant filed an answer denying the pertinent allegations of the complaint and further denied having any liability to Plaintiff. Defendant claimed the sole proximate cause of Plaintiff's injuries was Plaintiff's "failing to be alert and to see what was there to be seen." Defendant also asserted as a defense the alleged comparative fault of Southeast Service Corporation, Inc., or other third parties over whom Defendant had no control.[2]

After Plaintiff was deposed, Defendant filed a motion for summary judgment relying on the following deposition testimony of Plaintiff:

1. Prior to the date of the accident, Plaintiff never had any trouble going in or out of the mall and never saw anything on the roadway;

2. Plaintiff did not notice any slippery substances as she was walking across the entrance/exit area at the time of the accident;

3. Plaintiff did not know how long the substance had been there, where it came from, or if anybody at the mall knew it was there; and

---

[1] Plaintiff's husband also sued for loss of consortium.

[2] After the answer was filed, Plaintiff amended her complaint to assert a claim against Southeast Service Corporation, Inc. This claim was voluntarily dismissed later.

4.      Plaintiff did not know if anybody at the mall had an opportunity to do anything about the substance prior to the accident.

Based on this testimony, Defendant argued it was entitled to summary judgment because Plaintiff had no proof that Defendant had either actual or constructive notice of the alleged dangerous condition. Defendant did not file a supporting affidavit.

Plaintiff responded to the motion for summary judgment and generally acknowledged her burden of having to establish either actual or constructive notice on the part of Defendant since she had no proof Defendant or one of its agents created the allegedly dangerous condition. Plaintiff claimed, however, that she had established constructive notice because of Defendant's "method of operation." Specifically, Plaintiff claimed Defendant designed its building and parking area so that vehicle drive lanes were in between the primary entrances and exits to the mall and the parking spaces for its customers. According to Plaintiff:

> The Defendant allows, or fails to prohibit, both commercial and private vehicles to stop outside of these primary entrances/exits to load and unload passengers and/or merchandise purchased at the Mall. Clearly, it is foreseeable that these vehicles will from time to time leak engine fluids that could cause a pedestrian to fall and sustain injury....

Plaintiff also submitted the affidavit of Jason Varney ("Varney"), a service consultant for Beaty Chevrolet in Knoxville. According to Varney, it is a common occurrence for motor vehicles to leak engine fluids which can pool on the ground when a car slows down or stops. Varney stated these engine fluids can create a slick surface. After reviewing pictures which were submitted as exhibits to depositions, Varney concluded the "markings on the pavement would appear to be caused by engine fluids leaking onto the surface."

The Trial Court concluded that Defendant's parking lot was not a "method of operation," and Plaintiff had shown neither actual nor constructive notice on the part of Defendant. Accordingly, the Trial Court granted Defendant's motion for summary judgment.

Plaintiff appeals raising the following issue: "Whether or not the Trial Court erred in granting the Defendant's motion for summary judgment based upon the Court's holding that the Defendant lacked notice of the hazardous condition existing on its property?"

### Discussion

The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000):

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn

from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89. A fact is "material" for summary judgment purposes, if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)(quoting *Byrd v. Hall*, 847 S.W.2d at 211).

This Court discussed the relevant law in slip and fall cases in *Martin v. Washmaster Auto Center, U.S.A.*, 946 S.W.2d 314 (Tenn. Ct. App. 1996). In *Martin*, the plaintiff was outside when she slipped and fell on asphalt at the defendant's business. The plaintiff brought suit and eventually obtained a jury verdict for $125,148.18, which was reduced to $93,861.14 under comparative fault principles. On appeal, this Court set aside the jury's verdict and entered judgment for the defendant. In so doing, we stated:

> While business proprietors, such as Washmasters, are not insurers of their patrons' safety, they are required to use due care under all circumstances. *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 822 (Tenn. App. 1992). In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, it must be shown that the condition (1) was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, there must be actual or constructive notice on the part of the owner or operator that the condition existed prior to the accident. *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. App. 1995); *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. App. 1980). Constructive knowledge can be shown by proving the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of such condition. *Simmons v. Sears, Roebuck and Co.*, 713 S.W.2d 640, 641 (Tenn. 1986).
>
> Alternatively, the notice requirement is met if the plaintiff can prove that the defendant's method of operation created a hazardous situation foreseeably harmful to others. *Hale v. Blue Boar Cafeteria Co.*, [1980 Tenn. App. LEXIS 321] (Tenn. App., unpublished opinion, filed at Jackson, Feb. 21, 1980).

*Martin*, 946 S.W.2d at 318.

In the present case, Plaintiff, lacking any proof as to how the slippery condition on the pavement was created or how long it existed, relied on the "method of operation" theory to show

constructive notice on the part of Defendant. As discussed by this Court in *Martin*, *supra,* the method of operation theory has evolved over time. When this theory initially was developed, the notice requirement essentially was done away with and the issues were: 1) whether the condition created by the chosen method of operation constitutes a hazardous situation foreseeably harmful to others; 2) whether the proprietor used reasonable and ordinary care toward its invitees under these circumstances; and 3) whether the condition created was a direct and proximate cause of the plaintiff's injuries. *Martin*, 946 S.W.2d at 320 (citing *Hale v. Blue Boar Cafeteria Co*, 1980 Tenn. App. LEXIS 321 (Tenn. Ct. App. Feb. 21, 1980)). The more recent cases, however, discussed the method of operation theory in terms of constructive notice and focused on determining whether there was a pattern of conduct, a recurring incident, or a general or continuing condition which indicated the dangerous condition's existence. *Martin*, 946 S.W.2d at 320 (citing *Beske v. Opryland USA, Inc.*, 923 S.W.2d 544, 546 (Tenn. Ct. App. 1996)).

Having set forth the relevant law, we now turn to whether the Trial Court was correct in granting Defendant's motion for summary judgment. As set forth by our Supreme Court in *Staples*, to properly support a motion for summary judgment, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *Staples*, 15 S.W.3d at 88; *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). Until this happens, the non-moving party's burden to produce evidence establishing the existence of a genuine factual issue for trial is not triggered. *Staples,* 15 S.W.3d at 88; *McCarley*, 960 S.W.2d at 588.

In *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585 (Tenn. 1998), the plaintiff brought suit claiming he contracted food poisoning after consuming food that had been improperly prepared at a Kentucky Fried Chicken restaurant owned by the defendant. Earlier that same day, the plaintiff had consumed a breakfast consisting of bacon, eggs, and rice. *McCarley*, 960 S.W.2d at 587. The defendant moved for summary judgment, claiming (1) the plaintiff had consumed bacon prior to eating the chicken; (2) either the bacon or the chicken could have cause the food poisoning; and (3) neither the bacon nor the chicken had been tested for the presence of campylobacter. Because none of the food had been tested, the defendant claimed that the plaintiff could not prove by a preponderance of the evidence that it was actually the chicken that caused the food poisoning. *Id*. The trial court agreed with the defendant and granted its motion for summary judgment, a decision affirmed by this Court. *Id*.

On appeal to the Supreme Court, the grant of summary judgment was reversed. In so doing, the Supreme Court stated:

> Initially, we find that the proper standard and burden shifting analysis applicable to summary judgment dispositions has not been applied. The appellate court acknowledged the moving party's burden of demonstrating the absence of material facts creating genuine issues for trial. The court, however, bypassed the moving parties' initial burden and addressed only the sufficiency of the non-moving parties'

opposing evidence. We find that the court erred in focusing on the non-moving parties' burden without first addressing whether that burden was actually triggered.

A party seeking summary judgment must demonstrate the absence of any genuine and material factual issues. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). Mere "conclusory assertion[s] that the non-moving party has no evidence is clearly insufficient." *Id*. at 215. The movant must either affirmatively negate an essential element of the non-movant's claim or conclusively establish an affirmative defense. *Id.* 215 n.5. If the movant does not negate a claimed basis for the suit, the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails. *Id.*

*McCarley*, 960 S.W.2d at 587-88. The Supreme Court went on to conclude that while the defendant's assertions may cause doubt as to whether the food poisoning was caused by the bacon or the chicken, the defendant's evidence did not negate the chicken from the possible list of causes. As a result, summary judgment was not appropriate. *Id*. at 588.

In *Madison v. Love*, No. 03A01-9903-CV-00069, 1999 Tenn. App. LEXIS 797 (Tenn. Ct. App. Nov. 24, 1999)(hereafter referred to as *"Madison I"*), the plaintiff brought suit against the owners of Encore Nightclub claiming Encore failed to assist plaintiff's daughter within a reasonable time after she collapsed on Encore's dance floor. More specifically, plaintiff claimed Encore failed or refused to call for an ambulance for some five to ten minutes after her daughter collapsed, and this delay caused her death. *Madison I*, 1999 Tenn. App. LEXIS 797, at **1, 2. The defendants moved for summary judgment based on the affidavit of Dr. McCormick, the physician who performed the autopsy on the plaintiff's daughter. Dr. McCormick concluded the cause of death was "unknown." *Id*. at * 2. This Court concluded this affidavit was sufficient to negate causation, an essential element of the plaintiff's claim. Specifically, we stated:

Assuming, for the purpose of analyzing the issue of summary judgment, that Encore breached a duty owed to Kim, the plaintiff's cause of action is stymied by a fatal deficiency: the cause of death is unknown. If the cause of death is unknown -- and it is on the record now before us -- the plaintiff is unable to relate Kim's death to Encore's breach of duty. This being the case, there is nothing for trial and summary judgment was and is appropriate.

*Madison I*, 1999 Tenn. App. LEXIS 797, at * 10.

In *Madison I*, the Tennessee Supreme Court granted the plaintiff's application for permission to appeal and remanded the case to this Court for reconsideration in accordance with its

opinion in *McCarley, supra. See Madison v. Love*, No. E1999-01188-SC-R11-CV, 2000 Tenn. LEXIS 352 (Tenn. June 19, 2000). On remand, and upon further reflection, we concluded summary judgment was inappropriate because the defendants had failed to negate an essential element of plaintiff's claim. *Madison v. Love*, No. E2000-01692-COA-RM-CV, 2000 Tenn. App. LEXIS 495, at * 3 (Tenn. Ct. App. July 28, 2000), *no appl. perm. appeal filed*, (hereafter referred to as *"Madison II"*). We stated:

> While Dr. McCormick's affidavit -- and hence his presumed testimony -- may be a serious impediment to the successful pursuit of this claim at trial, that is not the issue before us. Material supporting a motion for summary judgment must do more than "nip at the heels" of an essential element of a cause of action; it must *negate* that element. While it is clear that Dr. McCormick's affidavit casts doubt upon the plaintiff's ability to prove causation, that affidavit does not do enough. It does not *negate* the plaintiff's claim of causation in a way that would trigger the plaintiff's burden to produce countervailing material. In order to negate the element of causation, the defendants would have had to present admissible competent testimony that the defendants' failure to render aid did not cause or contribute to the death of the plaintiff's decedent. The affidavit, with its cause-of-death-is-unknown language is not the same.

> The Supreme Court held in *McCarley* that the lower courts in that case failed to properly analyze whether the non-movant's burden was triggered. 960 S.W.2d at 588. We conclude that we are subject to the same criticism. An affidavit which simply casts doubt on a plaintiff's claim is not sufficient to require the plaintiff to engage in a battle of facts "on the papers." In the instant case, the plaintiff was not required to respond to the defendants' motion since the defendants' supporting material did not conclusively negate an essential element of the plaintiff's cause of action. Therefore, we conclude summary judgment was and is inappropriate.

*Madison II*, 2000 Tenn. App. LEXIS 495, at **4, 5 (emphasis in original).

In the present case, and in accordance with the decisions in *McCarley* and *Madison II*, we do not believe Defendant was entitled to summary judgment. It is true that, on the record before us, Plaintiff does not know how long the slippery substance had been there, where it came from, or if anybody at the mall knew it was there or had an opportunity to do anything about it prior to the accident. What is lacking, however, is any proof *that Defendant* did not have actual or constructive notice of the existence of the oil spot. Without this affirmative proof at the summary judgment stage, Defendant did not negate an essential element of Plaintiff's claim, i.e., here that Defendant had either actual or constructive notice. The portion of Plaintiff's deposition relied upon

by Defendant does not negate the essential notice element of Plaintiff's claim in a way that triggers Plaintiff's burden to produce countervailing material.

Further, and as stated previously, Plaintiff attempted to show constructive notice via the "method of operation" theory. Defendant argues, and the Trial Court agreed, that its parking lot, in and of itself, cannot constitute a "method of operation." According to Defendant, if we conclude Defendant's parking lot is a method of operation, "then the practical effect would be that every business would automatically have, at the very least, constructive notice and responsibility for every incident which occurs in their parking lot." We do not believe that simply because something such as a parking lot is located on or is a part of the premises of a business that it automatically becomes part of the business' "method of operation," and to this extent we agree with Defendant. However, we are unwilling to hold, as a matter of law, that a parking lot never can be part of a business' method of operation. The more precise issue at this summary judgment stage is whether Defendant offered any proof that its parking lot does not constitute a part of its method of operation. The record contains no affidavits from Defendant containing anything about the parking lot. Plaintiff claims Defendant allows (or fails to prohibit) "both commercial and private vehicles to stop outside of these primary entrances/exits to load and unload passengers and/or merchandise purchased at the Mall." The proof relied upon by Defendant in support of its motion for summary judgment contains absolutely no proof on the issue of whether the parking lot is a part of Defendant's method of operation, and this proof certainly never established that it was not a part of Defendant's method of operation. Without such evidence, we cannot agree with the Trial Court's conclusion that Defendant's parking lot, in and of itself, does not constitute a part of Defendant's method of operation.

As noted in *Martin*, *supra*, the more recent cases discussing the method of operation theory focused on whether there was a "pattern of conduct, a recurring incident or a general or continuing condition indicating the dangerous condition's existence." *Martin*, 946 S.W.2d at 320 (citing *Beske v. Opryland USA, Inc.*, 923 S.W.2d 544, 546 (Tenn. Ct. App. 1996)).[3] Utilizing this line of cases, even *if* Defendant's parking lot could be deemed a method of operation in general, Plaintiff would still have to show a "pattern of conduct, a recurring incident or a general or continuing condition indicating the dangerous condition's existence." However, Defendant filed no affidavit and offered no proof establishing there was no pattern of conduct, recurring incident, etc. Without such proof, Defendant did not affirmatively negate the necessary element of notice under Plaintiff's method of operation theory. Plaintiff, therefore, was not required to produce evidence establishing a genuine issue of material fact on this issue.

While Plaintiff's deposition testimony certainly casts doubt on her ability to prove the necessary element of Defendant's notice, that testimony does not negate this essential element

[3] As discussed at length previously, the *Martin* Court noted the evolution of this theory and what a plaintiff was required to prove when this theory was initially developed versus what is required under the more recent cases. The *Martin* Court eventually concluded there was no material evidence to support the jury's verdict under either of these standards. *Martin*, 946 S.W.2d at 320, 321. The result here is the same under either of these standards at this summary judgment stage.

in a way that triggers Plaintiff's burden to produce countervailing material. In order to negate this necessary element of notice at the summary judgment stage, Defendant must present admissible competent testimony that Defendant had no notice, either actual or constructive or because of its method of operation, of the alleged dangerous condition. No such testimony was presented to the Trial Court. Since Defendant did not negate this essential notice element of Plaintiff's claim, Plaintiff's burden to produce either supporting affidavits or discovery material was not triggered and the motion for summary judgment must fail.

In summary, we conclude the Trial Court erred in granting Defendant's motion for summary judgment because Defendant set forth no proof affirmatively negating an essential element of Plaintiff's claim. Without such proof, Plaintiff's burden to establish the existence of a genuine issue of material fact never was triggered. In reaching this conclusion, we express no opinion on whether Defendant's parking lot constitutes a part of its method of operation or, if it does, whether Plaintiff can meet her ultimate burden of proof.

### Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for such further proceedings as are required consistent with this Opinion. The costs on appeal are assessed against the Appellee West Town Mall.

_____
D. MICHAEL SWINEY, JUDGE

-10-