# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 9, 2008 Session

## ROY S. LAWRENCE, ET AL. v. HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a SUMMIT MEDICAL CENTER, ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 03C-795    Barbara N. Haynes, Judge

---

### No. M2007-01128-COA-R3-CV -Filed August 12, 2008

---

Plaintiffs, husband and wife, filed this premises liability action for personal injuries sustained by the elderly husband who was injured when automatic doors at the entrance to a medical office building struck him causing him to fall. In the premises liability action that followed, Plaintiffs alleged that the major tenant of the office building and the property management company failed to exercise the required due care in the maintenance, inspection, and repair of the doors and/or to properly warn Plaintiffs of the dangers existing at the office building. The trial court summarily dismissed the claims against both defendants. We have determined the major tenant owed no duty to Plaintiffs and thus was entitled to summary judgment. We have also determined that the property management company did not create the alleged dangerous or defective condition, and it did not have actual or constructive knowledge that a dangerous or defective condition existed. Accordingly, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

B. Keith Williams, Jason G. Denton and James R. Stocks, Lebanon, Tennessee, for the appellants, Roy S. Lawrence and Fleeta Lawrence.

Bryan Essary and Brian P. Manookian, Nashville, Tennessee, for the appellee, HCA Health Services of Tennessee, Inc., d/b/a Summit Medical Center.

William B. Jakes, III, and Hugh C. Gracey, III, Nashville, Tennessee, for the appellee, Holladay Property Services, Inc.

### OPINION

Roy S. Lawrence had an appointment on March 18, 2002, with his podiatrist, Dr. Hawthorn, whose office was located in the multiple-tenant medical office building at Summit Medical Center. Mr. Lawrence was seventy-eight years old at the time and had difficulty walking, requiring the

assistance of a walker. As a consequence, his wife, Fleeta Lawrence, drove the car and accompanied him to his appointment with Dr. Hawthorn.

After driving to the entrance of the medical office building, Mrs. Lawrence helped her husband get out of the car and walked with him through the automatic doors at the front of the medical office building into the lobby where he waited as she parked the car. After parking the car, Mrs. Lawrence returned to assist her husband as he walked to Dr. Hawthorn's office, which was located within the medical office building. Mrs. Lawrence did not stay with Mr. Lawrence during his appointment, but later returned to the medical office building where she found Mr. Lawrence waiting in the lobby. Mrs. Lawrence left him there to wait while she returned with the car. Unfortunately, Mr. Lawrence did not wait for his wife to return. Instead, he chose to exit the building without his wife's assistance. The doors opened automatically as Mr. Lawrence approached the front door of the medical office building. As he was walking through the doorway with the assistance of his walker, the automatic doors began to close. Tragically, Mr. Lawrence was hit by the closing doors and he fell to the ground. As a result of his fall, Mr. Lawrence sustained a head injury, a broken hip, and related injuries.

On March 18, 2003, Plaintiffs, Roy S. Lawrence and his wife, Fleeta Lawrence, filed the first of two negligence actions against several defendants. The original defendants were HCA, Inc., Hospital Corporation of America, HCA Health Services of Tennessee, Inc., d/b/a Summit Medical Center, HCA Health Services of Tennessee, Inc., d/b/a Summit Ambulatory Surgery Center and Medical Office Buildings of Tennessee LLC. One of the original defendants, HCA Health Services of Tennessee, Inc., d/b/a Summit Medical Center, was the major tenant of the office building. On June 24, 2003, Plaintiffs filed a second and essentially identical action against the property manager of the office building, Holladay Property Services, Inc. In each of the Complaints, Plaintiffs alleged that the defendants failed to exercise the required due care in the maintenance, inspection, and repair of the automatic doors and/or to properly warn Plaintiffs of the dangers existing at the office building. The two actions were soon consolidated. Thereafter, the claims against all of the defendants except for HCA Health Services of Tennessee, Inc., d/b/a Summit Medical Center ("HCA") and Holladay Property Services, Inc. ("Holladay") were dismissed.

HCA and Holladay both moved for summary judgment. HCA contended it was neither an owner nor operator of the office building, that it was merely a lessee, that the automatic doors were part of the common area, not its leased premises, and that it had no duty to maintain or conduct inspections of the common area, namely the automatic doors. Alternatively, HCA contended that if there was a duty, there was no evidence on which to conclude that HCA caused or created the dangerous condition or that it had actual or constructive notice of the injury-causing condition. For its part, Holladay contended it was not liable because it did not cause or create a dangerous condition, it did not have actual notice of a dangerous condition, and it did not have constructive notice of a dangerous condition.

Plaintiffs opposed the motions relying in principal part on the deposition and supplemental report of their expert witness, who testified in general terms that the defendants should have

performed daily safety checks that would have discovered any existing defects or malfunctions. Plaintiffs' also relied on this court's opinion in another automatic door case, *Frazer v. Horton Automatics*, No. E2006-00102-COA-R9-CV, 2006 WL 3001013 (Tenn. Ct. App. Oct. 23, 2006).

After a hearing on the motions, the trial court summarily dismissed all claims against the defendants without stating the legal grounds for granting summary judgment. This appeal followed.

## STANDARD OF REVIEW

The issues were resolved in the trial court upon summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal, *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003), and on appeal we must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

## ANALYSIS

For there to be a viable cause of action for negligence, the plaintiff must establish the following elements as to each defendant: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) legal cause-formerly known as proximate cause. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991).

To be entitled to summary judgment, a defendant must affirmatively negate an essential element of the plaintiff's claim, or establish an affirmative defense that conclusively defeats the plaintiff's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000). Tenn. R. Civ. P. 56 .04 was amended effective July 1, 2007, to require the trial court to "state the legal grounds upon which the court denies or grants" the motion for summary judgment. The order granting summary judgment in this case was entered prior to the effective date of the amendment and the trial court did not state the legal grounds upon which it granted the motions. We will, therefore, focus on the grounds asserted by the defendants to see if any of them are sufficient to negate an essential element of Plaintiffs' claims. We will analyze the claims against each defendant separately.

### HCA Health Services of Tennessee, Inc.

HCA contends, *inter alia*, that it did not owe a duty to Mr. Lawrence because it did not own or operate the medical office building, it was merely a tenant in a building with multiple tenants, and that Mr. Lawrence was injured in the common area, not within the premises for which HCA had a duty to maintain.

The critical question in many negligence cases is whether the defendant owed a duty to the plaintiff. *See West v. East Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005)*; Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). In deciding the issue of duty, courts look at whether a particular defendant was under any obligation imposed by law for the benefit of a particular plaintiff. *Dooley v. Everett*, 805 S.W.2d 380, 384 (Tenn. Ct. App. 1990); *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). The question of whether a defendant owed a duty to a plaintiff is a question of law. *Draper v. Westerfield*, 181 S.W.3d 283, 291 (Tenn. 2005); *Bradshaw*, 854 S.W.2d at 869.

It is undisputed that HCA was not the owner of the medical office building. Instead, the medical office building in which Dr. Hawthorne's office was located was owned and operated by Medical Office Buildings of Tennessee ("MedCap"), which was never made a party to this action. HCA was one of several tenants in the medical office building, albeit the major tenant.

Tennessee has long held, absent an agreement to the contrary, that the owner is responsible for the condition of the common areas in a premises where there are multiple tenants. *Thompson v. Ruby Tuesday, Inc.*, No. M2004-01869-COA-R3-CV, 2006 WL 468724, at *4 (Tenn. Ct. App. Feb. 27, 2006) (holding that where the owner retains possession of a part of the premises for use in common by several tenants, the owner "is under a continuing duty imposed by law to exercise reasonable care to keep the common areas in good repair and safe condition"); *Woods v. Forest Hill Cemetery*, 192 S.W.2d 987, 991 (Tenn. 1946); *Buggs v. Memphis Hous. Auth.*, 450 S.W.2d 596, 598 (Tenn. Ct. App. 1969).

HCA had no contractual duty to maintain or repair the automatic doors at the entrance to the office building. To the contrary, as the lease with MedCap expressly provides, MedCap had the affirmative duty to maintain the common areas, including the automatic doors at issue. Moreover, MedCap contracted with Holladay to provide the requisite property management service for the multiple-tenant office building, and Holladay contracted with Mid South Automatic Door to maintain and service the automatic doors.

Although the owner is responsible for maintaining the common areas, tenants may have a duty to see that the leased premises, particularly the approach to the premises leased by the tenant, is in a reasonably safe condition. *Berry v. Houchens Market of Tennessee, Inc.*, 253 S.W.3d 141, 146 (Tenn. Ct. App. 2007) (holding that although the landlord has the duty to keep common areas safe and in good repair, a tenant also has a "duty to see that *the leased premises and its approach* is in a reasonably safe condition" (emphasis added)); *Gladman v. Revco Disc. Drug Ctrs., Inc.*, 669 S.W.2d 677, 678-79 (Tenn. Ct. App. 1984). There are, however, practical limitations to the concept that a tenant may have a duty to see that the approach to the tenant's premises is reasonably safe. In both *Berry* and *Gladman*, it was contended that a tenant in a multiple-tenant shopping center owed a duty to the plaintiff who was injured in a common area, the parking lot; however, the court in both *Berry* and *Gladman* concluded that a customer traversing the parking lot of a multiple-tenant shopping center did not constitute "an ingress/egress circumstance" and the tenant did not owe a duty to the plaintiffs. *Berry*, 253 S.W.3d at 146.

Here, the injury to Mr. Lawrence did not occur on or within the premises leased by HCA. Accordingly, the only basis upon which HCA may owe a duty to Mr. Lawrence would be if the ingress/egress extension of a tenant's premises liability applies. We, however, find no basis upon which to apply the ingress/egress principle in this case because Mr. Lawrence was not in the building to visit HCA's leased premises. Instead, Mr. Lawrence was in the building to see his podiatrist, Dr. Hawthorn. Accordingly, if the ingress/egress principle applied, it would be Dr. Hawthorn, not HCA, who owed a duty to Mr. Lawrence to provide safe ingress and egress. *See Id.*; *see also Thompson*, 2006 WL 468724, at *5; *Frazee v. Med Center Inns of America, Inc.*, No. 01A01-9301-CV-00034, 1993 WL 312674, at *4-5 (Tenn. Ct. App. Aug. 18, 1993).

As previously explained, the establishment of a duty owed by a defendant to the plaintiff is an essential element in a negligence action. *Church v. Perales*, 39 S.W.3d 149, 163 (Tenn. Ct. App. 2000); *Bradshaw*, 854 S.W.2d at 869. If a defendant negates an essential element of the plaintiff's claim, it is entitled to summary judgment. *Cherry*, 36 S.W.3d at 82-83; *Byrd v. Hall*, 847 S.W.2d 208, 216 n.5 (Tenn. 1993). We have determined as a matter of law that HCA did not owe Mr. Lawrence a duty to maintain the automatic doors. Accordingly, HCA was entitled to summary judgment.[1]

## Assuming HCA Owed a Duty to Plaintiffs

Assuming, *arguendo,* that HCA did owe Mr. Lawrence a duty of care relative to the automatic doors, we will determine whether HCA has negated another essential element of Plaintiffs' claim.

Business proprietors are not insurers of their patrons' safety. *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). They are, however, required to use "due care under all the circumstances." *Id.* (citing *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)). For an operator of a premises to be held liable for negligence in allowing a dangerous or defective condition to exist on the premises, the plaintiff must prove, in addition to the elements of negligence, that "the condition was caused or created by the owner, operator, or his agent," or if the condition was created by someone other than the owner, operator, or his agent, "that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Id.* (citations omitted). Constructive notice may be established by proof that the dangerous or defective condition existed for such a length of time that the defendant should have become aware of the

---

[1] We acknowledge that Plaintiffs contend that our decision in *Frazer v. Horton Automatics*, No. E2006-00102-COA-R9-CV, 2006 WL 3001013 (Tenn. Ct. App. Oct. 23, 2006), precludes summary judgment in favor of HCA. We respectfully disagree, finding *Frazer* to be distinguishable because HCA was neither an owner nor operator of the medical office building and had no duty to maintain the common areas or the automatic doors. In *Frazer*, we determined that the owner and occupier of the building had a duty to maintain the automatic doors that were at issue in that case. *Id.* at *6. Here we determined that HCA was not an owner or operator of the medical office building; therefore, *Frazer* does not apply. As for Holladay, we have determined that it had a duty to maintain the automatic doors. The issue concerning Holladay is whether it had actual or constructive knowledge of a dangerous or defective condition. As we discuss later in this opinion, there is no evidence in the record on which to find that it had the requisite notice or knowledge.

condition in the exercise of reasonable care. *Id.* (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)).

Plaintiffs contend that HCA's failure to conduct daily safety checks caused the dangerous condition of the automatic doors. We find no merit to this contention because HCA had no duty or responsibility to check or service the automatic doors. The only duty HCA assumed that pertained to the automatic doors was to unlock the doors each morning, and Plaintiffs have failed to explain how this limited role could be construed to impose a duty on HCA to inspect and maintain the doors.[2] As the lease agreement expressly provided, inspection and maintenance of the doors was the responsibility of the owner of the building, not HCA. In fact, Mid South Automatic Doors was under contract to perform periodic maintenance and service work on the doors. Moreover, Mid South performed a complete American Association of Automatic Door Manufacturers (AAADM) inspection three days prior to Mr. Lawrence's injury. Considering the evidence in the light most favorable to Plaintiffs, we find no evidence upon which to conclude that the condition was caused or created by HCA or its agent.

As for actual or constructive knowledge, the record shows that if and when HCA received notice that the automatic doors needed service or repair, HCA would promptly notify Mid South Automatic Door. As was the case on Friday, March 13, 2002, when someone notified HCA that the doors were "dragging," HCA promptly notified Mid South and Mid South promptly dispatched someone to service the doors. After correcting the "dragging" problem, the technician performed a complete AAADM inspection on the doors. This inspection, which was done three days before Mr. Lawrence's injury, included a check of all the doors' sensors, safety features, and other functions to ensure the doors were opening properly. Notably, no accident reports or complaints were made regarding the automatic doors between this last inspection on Friday, March 15, 2002, and when Mr. Lawrence was injured on Monday, March 18, 2002.

Considering the evidence in the light most favorable to Plaintiffs, we find no evidence upon which to conclude that HCA had actual or constructive knowledge that a problem existed with the door sensors prior to Mr. Lawrence's fall.

Therefore, assuming that HCA owed Plaintiffs a duty of care relative to the automatic doors, we find no evidence upon which to conclude that HCA caused or created a dangerous condition or that it had actual or constructive notice that a dangerous condition existed prior to Mr. Lawrence's fall.

Having addressed the claims against HCA, we will now determine whether the trial court correctly granted summary judgment to Holladay.

---

[2]This was done pursuant to a verbal understanding between HCA and Holladay.

Holladay Property Services

Holladay was under contract with the building's owner to provide maintenance and management services to the medical office building. Holladay's responsibilities included property inspections, preventative maintenance, scheduling maintenance, customer service, and problem solving for the medical office building. As a consequence of its contractual agreement with MedCap, Holladay became an operator of the medical office building.

As is the case with the owner, an operator of a premises can be held liable for negligence in allowing a dangerous or defective condition to exist on the premises if it is established that condition was created by the operator or the operator had actual or constructive notice that the condition existed prior to the accident. *Neff v. Southeastern Salvage Co.*, 694 S.W.2d 311, 313 (Tenn. Ct. App. 1985) (quoting *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. Ct. App. 1980)). Therefore, in order to hold Holladay liable for the alleged malfunction of the automatic doors, Plaintiffs must show that Holladay either created the dangerous condition or had actual or constructive notice of the dangerous condition of the automatic doors. *See Neff*, 694 S.W.2d at 313. If liability of the operator is to be predicated on constructive knowledge, the proof must show the dangerous or defective condition existed for such length of time that the operator knew, or in the exercise of ordinary care should have known, of its existence. *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995) (citation omitted).

The operator of a place of business is not an insurer of the safety of its customers but must exercise ordinary care to maintain the premises in a reasonably safe condition. *Jones*, 600 S.W.2d at 732 (quoting *Patterson v. Kroger Co.*, 389 S.W.2d 283, 286 (Tenn. Ct. App. 1964)). The duty imposed on the operator of a premises does not include the responsibility to remove or warn against "conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." *Rice v. Sabir*, 979 S.W.2d 305, 309 (Tenn. 1998) (quoting W. Page Keeton, *Prosser & Keeton on Torts*, § 61 at 426 (5th ed.1984)). In this regard, "the mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Id.* (citation omitted). The liability of an operator in premises liability cases stems from superior knowledge of the condition of the premises. *Ogle*, 919 S.W.2d at 46 (citing *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980)).

There is no evidence in the record to suggest that Holladay created a dangerous condition. Therefore, the issue before this court is whether the evidence presented in favor of and in opposition to Holladay's motion for summary judgment was sufficient to create a genuine issue of a material fact on the question of whether Holladay had actual notice or constructive notice that a dangerous or defective condition existed with regard to the automatic doors.

Pursuant to a contract with Mid South Door Company, the doors were inspected yearly by a professional service company, and each month the property manager employed by Holladay

conducted a monthly walk-through inspection of the medical office building. Pursuant to a protocol established by Holladay, when anyone would inform Holladay of a concern or complaint, Holladay would arrange for an inspection and service. In fact, three days prior to Mr. Lawrence's injury, the automatic doors at issue were inspected and passed a full AAADM inspection by Mid South. During the three days between the full AAADM inspection and Mr. Lawrence's fall, no one reported a problem with the doors. In fact, prior to Mr. Lawrence's injury on March 18, 2002, there had never been a report, complaint, or work order indicating that the automatic doors at issue had struck anyone or that the sensors were malfunctioning in a manner as to cause the doors to close while a person was walking through the doors. Accordingly, there is no evidence upon which to find that a dangerous or defective condition existed prior to Mr. Lawrence's fall.

Summary judgment is appropriate where a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law.[3] Tenn. R. Civ. P. 56.04; *Stovall*, 113 S.W.3d at 721. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey*, 90 S.W.3d at 695. Summary judgment should be granted when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Byrd*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20, 24-25 (Tenn. 1975).

For the reasons stated above, we have determined that Holladay is entitled to summary judgment as a matter of law.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Plaintiffs.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[3]When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).